[Grubbs, et al. v. Hawes.]

# Grubbs, *et al. v.* Hawes.

### *Bill to Foreclose Mortgage.*

(Decided June 29, 1911.   56 South. 227.)

1. *Fixtures; Questions.*—It is a mixed question of law and fact whether a chattel has become a part of the realty.

2. *Same; Intention of Parties.*—The intention with which a chattel is attached to the realty is of great importance in determining whether it had become a fixture.

3. *Same; Mortgagor and Mortgagee; Foreclosure.*—A mortgagor of a lot and building in which machinery was erected after the execution of the mortgage was not prejudiced by permitting the mortgagee to pay off the balance due upon the machinery which had become a fixture so as to permit the building and machinery to be sold as a whole on foreclosure, since the machinery could be treated as between the mortgagor and mortgagee as a fixture, although as between the mortgagor and the original seller, it was a chattel.

4. *Same; Pleading.*—The bill examined and held to sufficiently allege that the machinery was a part of the realty so as to be covered by the mortgagee.

5. *Pleading; Demurrer; Construction.*—On demurrer, the allegations of the pleading are taken most strongly against the pleader.

6. *Equity; Bill; Numbering.*—Although rule of practice No. 8, requires bills of equity to be numbered, the fact that the paragraphs were lettered instead of being numbered was not objectionable where the purpose of the rule was effectuated by the course pursued.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Walker A. Hawes against Walter M. Grubbs and others. From a decree for complainant on demurrer, defendants appeal. Affirmed.

The respondents named in the bill are Walter M. Grubbs, Hallie Grubbs, Dodson Printers' Supply Company, a corporation, C. Ed Albes, W. N. Hall, and J. W. Mulligan. Paragraph 1 alleges the execution of a mortgage to orator by Walter M. and Hallie Grubbs, on May 15, 1905, or on or about May 23, 1905, in the sum of $1,250, which deed was duly acknowledged and

recorded, and conveyed lot C, in block 312, of the Decatur M. & L. Co.'s addition to Decatur, Ala. Paragraph 2 alleges the execution, contemporaneous with the execution of the mortgage, by Walter Grubbs to orator, of eight promissory notes, each for the sum of $150, except the one maturing May 15, 1914, which was for the sum of $200; each note being payable as follows: One on May 15, 1907, and one on the 15th day of each succeeding May thereafter, until all of said notes should be paid, and the notes provided payment with interest semi-annually. Paragraph 3 alleges that Walter M. Grubbs had paid nothing whatever on said notes or mortgages, nor had any one paid him anything whatever, except four installments of interest at $50 each, paid by Walter Grubbs on the following dates: May 15, 1907, November 15, 1907, May 15, 1908, and November 15, 1908—and that the remainder of said notes and mortgages, counsel fees, insurance, premiums, taxes, assessments, etc., hereinafter set forth, are all past due and unpaid, and said Walter M. Grubbs is in default. Paragraph 4 alleges the provisions of the mortgage as to keeping the property insured against loss by fire in favor of orator, the payment of all taxes or other legal charges, and, on the failure of Grubbs to pay the same, that orator might pay or cause the same to be paid, which would then become a part of the indebtedness secured by the mortgage, and bear the same rate of interest as the principal debt secured thereby, and payable upon the security of the next maturing note thereafter. It also alleges the further provision that in case of default in the payment of said notes, or any one of them, and in the payment of any premiums of insurance, any taxes, or other charges that should have accrued, for a period of 60 days after maturity, then orator might declare the whole indebtedness payable immediately,

take possession, advertise for sale, etc. Paragraph 5 alleges the agreement to pay the expenses of foreclosure, including reasonable attorney's fees, any balance of principal and interest, together with any amount expended for insurance, taxes, or other charges, which might have been paid as therein agreed. It is further alleged that the note referred to contained an agreement to pay all costs of collection, including a reasonable attorney's fee, in case the note should not be paid at maturity, and the said note also waived the rights of exemption as to personal property. Paragraph 6 alleges that upon said lot of land above described there was afterwards erected a small one-story brick structure, planned, designed, and built for use as a printing office; and it was agreed at the time the money was loaned, for the payment of which said mortgage was executed, that said money should be expended in erecting said structure, and said building, after it was erected, was by the said Walter M. Grubbs equipped with the following machinery, which was to be used and which has been used in conducting a printing plant, and which constitutes a part of the printing outfit for which said structure was erected, to-wit: One Eclipse folding machine, No. 2383; also one 37x-inch rebuilt Campbell cylinder printing press; one No. 1 Eclipse folder, with steel runs and trimmers; one 14½x22-inch Chandler & Price press, No. K-82; one 8x12 Jones-Gordon jobber press; also one large electric motor for running said presses, and one long shaft and pulley connecting said motor and presses. Paragraph 7 avers that all of said machines above described are firmly fastened and fixed to the building; that they were installed and attached with especial reference to the building, and in furtherance of the purpose for which the building was erected, and with the object and intention that the same should be

permanent, and that, as between your orator and the said Walter M. Grubbs, the said articles, etc., were fixtures, and are and always have been, since their installation and connection, a part of the realty embraced within the lien of your orator's mortgage aforesaid. Paragraph 8 alleges that the said fixtures above mentioned, except the said motors and pulleys and shafts, and except, also, the said Jones-Gordon press, were purchased by the said Walter M. Grubbs from the Dodson Printers' Supply Company, on which a part of the purchase money, just how much is to your orator unknown, is past due and unpaid, and to secure the same Grubbs executed, contemporaneously with said purchase, certain instruments in writing, in substance and effect stipulating that the title to said machine should remain in the said Dodson Printers' Supply Company until said articles and others should be paid for in full. Copies of said agreements are made exhibits to the bill. It is then alleged that the Dodson Printers' Supply Company had brought detinue for said machines, which is now pending and undetermined in the Morgan law and equity court, of Morgan county, and that Walter M. Grubbs had executed the statutory bond enabling him to remain in custody of said property pending the determination of said suit, and that upon each of said bonds said W. N. Hall, C. Ed. Albes, and J. W. Mulligan were and are sureties. Paragraph 9 alleges Grubbs' insolvency, and that the mortgaged property and said machines above referred to as being a part of the realty, taken in connection with the incumbrances on said machines, altogether are much less in value than the amount of complainant's debt and the unpaid charges on said property hereinafter set out. Paragraph 10 alleges that on July 24, 1909, W. H. Drinkhard, as tax collector of Morgan county, Alabama, assumed to levy upon, and

did assume to make sale of, and did as tax collector execute substantially a statutory bill of sale of, a large amount of the printing outfit in said building, including the above-named Campbell roller press, for delinquent state and county taxes due and owing and assessed against the said Walter M. Grubbs and his property, and the purchaser at said sale was the said Hallie M. Grubbs, and the subject-matter of said sale was, or was recited to be in the said bill, after mentioning the number of articles, "all other printing material, fixtures, etc., belonging and appertaining to the office of the said Decatur News, belonging to said Walter M. Grubbs. It is further averred that on the 19th of July, 1909, Marvin West, as register in chancery in and for Morgan county, Ala., did as such register sell and convey to E. L. Simpson and J. D. Orr said house and lot above mentioned and described at and for the sum and price of $83.30, which was the amount of taxes due and owing and assessed against said Walter M. Grubbs by and in favor of the city of Decatur, Ala., for the preceding tax year; said Grubb being delinquent. Said sale was made under and by virtue of a decree rendered by the chancery court on May 17, 1909, in the case of City of Decatur v. Walter M. Grubbs, in a delinquent tax proceeding, which decree is here referred to and asked, if necessary, to be taken as a part of this bill of complaint. It is then alleged that orator considered himself compelled to and did purchase of and from said vendees, Simpson and Orr, all right, title, and interest which they held, and which they had acquired under said sale under said decree, at and for the sum of $90.81, taking from them a quitclaim deed to said property. It is further alleged against said property there are now past due, delinquent, unpaid, and interest-bearing taxes, which were of right due and payable October 1,

1909, in the amount of $13.50 with the further sum of $1 fees, and also the sum of $8 further taxes due the city of Decatur by the said Walter Grubbs, with interest and 50 cents fees, and also the following improvement assessment against said property for street and sidewalk improvements: Sidewalk improvements, $31.43, with interest since July 14, 1908, and street paving assessment of $173.10, with interest from November 6, 1908, and curbing assessments of $7.80, with interest from September 1, 1908. Paragraph 11 alleges the insurance premiums paid by orator to be $11.50, and that in this respect Grubbs is also in default. Paragraph 12 alleges divers and sundry other liabilities against the said W. M. Grubbs, with respect to which he is in default, and that his assets are far less in value than his liabilities, and that orator has no further security for the claim and indebtedness against the said Grubbs than is above set forth. Paragraph 13 alleges certain outstanding judgments against Grubbs, executions issued thereon, and returned no property. Paragraph 14 alleges that the building is of cheap construction and material, that it is in a leaky condition, on account of the defective roof, and that it is becoming generally dilapidated for want of ordinary care and attention; that it is decreasing in value, and is liable to decrease to a greater extent unless the court will take charge of the same through the instrumentality of a receiver, and unless a receiver is appointed there is liable to be and is danger of great loss and injury to the complainant. Paragraph 15 alleges demand for and refusal of possession of the real estate mentioned in the mortgage. Paragraph 16 annexes as exhibits to the bill the various judgments, bills of sale, decree, etc., previously set forth in the bill. Paragraph 17 offers to redeem from the Dodson Printers' Supply

Company, and paragraph 17a states the residence of all of the defendants. Then follows an appropriate prayer for special and general relief, for the appointment of a receiver, etc.

The amended bill alleges in paragraph A the ages of the parties, complainants and respondents. In paragraph B that, in addition to the appliances named in the original bill as being situated in the building on the land involved in this suit, there are two shorter shafts, with pulleys attached thereto, which shafts revolve in collars which have braces or other supports fastened to the building by bolts, nails, or other means, and are part of the real estate. In paragraph C it is alleged the tax sale to Hallie M. Grubbs, mentioned in the bill, was void for the reason that said Walter M. Grubbs willfully and purposely defaulted in the payment of the taxes, in order that the property might be sold for taxes and be purchased in the name of the wife, and in pursuance of such purpose the property was sold and purchased in the name of the wife with the funds or resources of the said Walter M. Grubbs, or the proceeds thereof. Paragraph D alleges the same sale to be void for the reason that the machines and appliances had become affixed to the freehold and were real estate, but were assessed by the assessor as personal property and condemned to be sold as such; that the necessary steps for the sale of real estate were not taken (setting out the statutory requirements); and alleging that the tax proceedings were an illegal effort to dismember the freehold by selling a part of the corpus thereof. Paragraph E avers that at the time Walter M. Grubbs made default with respect to the payment of taxes he was operating a printing plant known as the Decatur Weekly News, which he continued to operate after having supplied his wife, the said Hallie M. Grubbs, with

[Grubbs, et al. v. Hawes.]

money to purchase said property, or after having supplied it to some one else for her; and that ever since, until the enterprise was abandoned after the filing of the original bill, he has with the acquiescence and consent of Hallie M. Grubbs, continued to operate said plant to his own benefit, without the payment of rent or taxes. Paragraph F alleges that the defendant Dodson Printers' Supply Company is a nonresident of the state of Alabama, and has no property in this state, except, perhaps, some few liens or mortgages for the purchase money of machinery, and that it proposes to sell or make way with or dispose of said property as soon as it can obtain a judgment against the same, either by selling to somebody in the state of Alabama, or by transporting the property outside of the state; that it claims and contends that the property is worth more than its debts held thereof; that if the said detinue suits are tried in the law and equity court a large bill of costs will be incurred, and that the said printing company will insist upon the costs of these suits being paid before allowing complainant to redeem, and that this will work an additional burden upon complainant; that such parts of said property as are not fixtures should be first ordered sold or subjected to the Dodson Supply Company's debt, before resorting to that part of the machinery which is a part of the freehold. Then follows a list of the machines and property alleged to be not a part of the freehold. Paragraph G amends by striking from paragraph 7 the following words: "Is firmly fastened and fixed to the building; that." Paragraph I further amends by averring that said printing presses are heavy and ponderous; that the larger press rests and was originally installed after its acquisition by Grubbs, and before the filing of the original bill, upon piers constructed of brick and mortar, which start

below the surface of the ground, underneath the floor level of said building, and are built up solidly to about the floor level, with special reference to the support of said machine and its operation, and that said machine is rested upon said brick piers let into the ground as aforesaid, and has been firmly held in place while and when in operation by its own ponderous weight; that all the shafts are attached to the building in the same manner as are the shorter shafts in this amendment referred to; that said Grubbs acquired the lot and erected the building for the special avowed purpose of installing the printing plant upon the ground, or ground floor, in order that the operation thereof might not produce vibration and jarring of the building, and imperil the enterprise and the occupants of the house where he might be located. Paragraph I further amends the bill by averring that the two job presses and folders are ponderous, and are held in place when being run by their own weight; that the entire outfit of machinery was operated by an electric motor, which was firmly fastened to the brick wall by long bolts running through said motor, or the rims or edges thereof, let into and firmly embedded in the wall; and the said motor and said machines were all connected by belts running from one pillow to another, and by power communicated from the motor to the shafts, and from the shafts and pulleys to the belts, and from the belts to the machines. Paragraph J further amends the bill in paragraph 12 thereof with the added averment that Grubbs' assets and resources are insufficient for the payment of his liabilities, and that the names and amounts of other creditors to whom liabilities are owing are unknown to complainant. Paragraph K amends the prayer by asking that the Dodson Printers' Supply Company be enjoined and restrained from prosecuting its detinue

suits in the law and equity court; that it be enjoined from selling or disposing of the machines; that it be enjoined and restrained from removing any of said property out of the state, or from dislocating or removing it from the building; that the court order a sale of all that part of the property covered by the reservation of title of the Dodson Printers' Supply Company that may be ascertained to be chattels and not fixed to the freehold; that the proceeds be applied on the debt of the said Dodson Printers' Supply Company; that complainant be allowed to pay off and discharge the remainder of said debt, when ascertained; and that the building and machines which are a part of the realty be sold as an entirety.

KYLE & HUTSON, for appellant. The property was not so attached as to become a part of the freehold, and pass under the mortgage lien.—*Tillman v. DeLacey,* 80 Ala. 106; Jones on Mortgages, 49; *Rodgers v. Prattville M. Co.,* 81 Ala. 487. Having acquired jurisdiction of the case of the *Printers' Supply Co. v. Grubbs,* the law and equity court will be permitted to proceed to a final determination thereof, and hence, there was error in enjoining this suit.—1 Pom. Eq. §638. On the question as to when chattel becomes part of the realty, in addition to the authorities cited above, see.—87 Am. St. Rep. 266; 16 Am. St. Rep. 471; 27 Vt. 428; 59 Am. Dec. 648; 45 Am. St. Rep. 285; 26 N. J. E. 568; *Capital C. I. Co. v. Caldwell,* 95 Ala. 90; 92 Am. St. Rep. 261; *Parker v. Blount County,* 148 Ala. 277; 127 Mass. 125; 19 Cyc. 1041, et seq.

D. F. GREEN, and E. W. GODBEY, for appellee. The paragraphs of the bill may be as appropriately designated by letters as by figures; and *an amendment to the*

[Grubbs, et al. v. Hawes.]

*bill* need not recite that it is an amendment to any particular part. Machines held in place by gravity and connected with other machines firmly fixed to the freehold are part of the realty if installed as part of the plant to which the realty is permanently devoted, capable of such use and actually so used.—*Voorhis v. Freeman*, 37 Am. Decs. 490; *Higman v. Humes*, 40 So. Rep. 128, 145 Ala. 215; *Winslow v. Merchants Ins. Co.*, 38 Am. Dec. 368; *Ottumwa W. M. Co. v. Hawley*, 24 Am. Rep. 719 (725); *Giddings v. Freedly*, 128 Fed. 355 (359); *McLaughlin v. Nash*, 92 Am. Dec. 741; *Dudley v. Hurst*, 1 Am. St. Rep. 368 (372-3); *Thompson v. Smith*, 50 L. R. A. 780 (782); *Brigham v. Overstreet*, 10 L. R. A. N. S. 452 (454); *Equitable G. & T. Co. v. Knowles*, 67 Atl. Rep. 961 (697); *Cavis v. Beckford*, 13 Am. St. Rep. 554; *Union B. & T. Co. v. F. W. Wolf Co.*, 108 Am. St. Rep. 903 (906-7). Appellant's cases either involve trade fixtures between landlord and tenant; or outfits that are *ex-vi-termini* portable; or articles that are not annexed to the realty and also not connected with any other machine that is so connected; —or else are opposed to the overwhelming weight of authority. If the machines are fixtures as between mortgagor and mortgagee, the former cannot plead to a foreclosure suit, the pendency of an action of detinue brought by a third party.

SAYRE, J.—Appellee filed his bill to foreclose a mortgage which conveyed a lot in the city of Decatur by descriptive boundaries only. The principal subject of controversy between the parties is whether certain machinery put into a building upon the lot after the execution of the mortgage is to be included in the security. The question is doubtfully raised, but the parties have treated it as properly raised, and since its

determination will in the end be important, we would be willing to pretermit any objection which might perhaps be taken to the manner in which the demurrer presents the issue, and decide the question if that could be done at this stage of the cause. We will not repeat the averments of the original and amended bills in extenso. They will be set out in the report of the case. Nor do we intend to undertake any elaborate review of the many cases cited; nor to formulate any general statement of the tests to be applied in such cases. The author of the chapter on "Fixtures" in 19 Cyclopedia of Law and Procedure states it to be a mixed question of law and fact whether a chattel has become a part of the realty. He submits that from a consideration of the cases no more specific formula is possible, and very justly observes that "it is the effort to compress the tests of whether there has been such annexation as will change the status of the thing in question into a compact and specific formula that has rendered inevitable the contradictions in the decisions." Page 1038.

Appellant borrowed money from the appellee upon the express stipulation that it should be used in the erection of a permanent structure or building upon the mortgaged premises. There is, of course, no contention that the mortgage does not cover the building thus erected. Nor will appellant understand that the stipulation to which we have referred above has been permitted to be influential in determining the question whether the machinery was subsequently attached to the freehold in such manner and under such circumstances as to indicate an intention that it should become permanently a part thereof. This we say for the reason that while the intention with which a chattel is attached to realty is everywhere considered to be of

great importance, and while it would require no far-fetched inference to support the conclusion that the parties to the mortgage contemplated that the machinery should be located, as well as the building constructed, for the benefit of the inheritance, still it is not precisely so alleged in the bill. It is now referred to for the sole reason that appellant in his brief desires it to be noted that the mortgage makes no mention of the building. Our conclusion has been reached upon consideration of the averments of the original and amended bill. We cannot as yet know what the proof may show. As we understand appellant's brief, he insists that on the facts alleged the court must say as matter of law that as between the parties to this appeal the machinery has never become a part of the realty. Now complainant's general averment is that "all of said machinery above described was installed and attached with specific reference to the building, and in furtherance of the purpose for which the said building was erected, and the object and intention that the same should be permanent, and that as between your orator and the said Walter M. Grubbs, the said articles, etc., are fixtures, and are and always have been since their installation and connection, a part of the realty embraced within the lien of your orator's mortgages aforesaid." But appellant contends that this general, and as we think, sufficient averment of the original bill, though retained in the amended bill, is unsupported, is in fact eviscerated and destroyed by certain affirmative averments of the bill in its last shape, and by its failure to aver some other facts which will be mentioned, so that, upon the whole, the machinery in controversy, as between the parties to this appeal, cannot be held to have become a part of the freehold except by the exercise of unwarranted favor to the mortgagee,

[Grubbs, et al. v. Hawes.]

whereas the requirement of the law is that on demurrer the averments must be taken most strongly against the pleader. In this connection appellant observes that the bill contains no allegation that the machines could not be removed from the building without doing injury thereto; nor any that they are so ponderous as that by reason of that fact alone they ought to be considered as permanently placed; nor any that they could not be used as effectively in some other building; nor that the placing of the machines in the building enhanced the value thereof; nor that any of the machinery except the motor is actually attached to the building. No one nor all together of these omissions prevented the machines from being fixtures as they are alleged to be, though some or all of them may be of significance in the final determination of the question. But in addition to the general averment already noted it is averred that the building was planned and built for use as a printing office; that the machinery is ponderous and held in place by its own weight while being operated; that the large press rests upon brick piers that are built from the ground underneath the floor so as to prevent vibration; that the machinery is operated by an electric motor which is fastened to the wall by bolts; and that power is furnished "from the motor to the shafts (themselves fastened to the walls of the building), and from the shafts and pulleys to the belts, and from the belts to the machines." On this statement of the contents of the bill, and upon consideration of the principles of law declared, and the authorities cited and quoted, in *Humes v. Higman,* 145 Ala. 215, 40 South. 128, for the mere repetition of which at this time there seems to be no occasion, we conclude that the machinery in question is averred to be a part of the realty and within the lien of the mortgage, whatever the proof in that re-

gard may develop on a final hearing. So, after all, we can do no more than respond to the specific question raised by the demurrer which avers the bill to be inconsistent, repugnant, and self-contradictory in respect to the connection of the machines with the realty. We do not find the demurrer to be well taken.

The machinery in question was bought by Grubbs from the Dodson Printers' Supply Company, which company retained title as security for the unpaid balance of purchase money. Before the bill was filed that company had brought statutory detinue for the machinery, and it had been claimed and replevied by Mrs. Grubbs. The amended bill contains a prayer that the detinue suit be enjoined, and that upon final hearing complainant be allowed to pay off and discharge the balance of the debt due to the Dodson Company, and that the building and the machines be sold as an entirety. To this part of the bill the appealing defendants demurred and now complain that their demurrer was improperly overruled. The machines may be fixtures as between complainant and appellants, though, as between the Dodson Company and all others, they may be mere chattels. But the Dodson Company has made no complaint of this feature of the bill either here or in the court below. On the assumption that as between appellants and appellee the machines do form a part of the realty, as the bill alleges the case to be, it is not perceived how the relief here sought can prejudice any right of the appellants. The court of equity has power to make the complainant's mortgage security completely effective according to the intent and purpose of the parties. If the Dodson Company were objecting to this feature of the bill, an entirely different question would be presented.

[Hall & Farley v. Alabama Terminal & Improvement Co., et al.]

The original bill was divided into paragraphs numbered from 1 to 17a. By amendment, paragraphs lettered from A to K were added to the bill. The effect of one of these paragraphs was to strike certain words from paragraph 7 of the original bill. It is urged that by lettering the amendatory paragraphs, instead of numbering them, there was a violation of Rule of Practice No. 8, which directs that "the stating part of all bills must be divided into sections, and numbered consecutively, 1, 2," etc. We see no reason why a substitute should be sought for so plain a direction. But the fact that every purpose of the rule has been met is so evident that we would not be satisfied to affirm error of the ruling below which sustained the bill against the demurrer taking objection to the bill for a departure from the practice indicated by the rule.

We are of opinion that the decree must be affirmed. Affirmed.

DOWDELL, C. J., and ANDERSON and SOMERVILLE, JJ., concur.