(84 South. 810)

SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. KEEFE et al. (6 Div. 958.)

(Supreme Court of Alabama. Jan. 15, 1920. Rehearing Denied Feb. 5, 1920.)

1. EVIDENCE ⟞571(1)—EXPERT TESTIMONY OF PHYSICIAN AS TO HEALTH OF INSURED NOT CONCLUSIVE.

In action on benefit certificate in which the issue was the good health of insured at time of reinstatement, opinion evidence of a physician who examined insured is not conclusive on the jury.

2. TRIAL ⟞145 — REQUESTED INSTRUCTIONS ON PART OF COUNTS IN COMPLAINT HELD BAD IN FORM.

Requested instructions to find for defendant on counts 4 and 5 if jury believe the evidence are bad in form, as there are other counts in the complaint.

3. APPEAL AND ERROR ⟞230, 231(1)—OBJECTION TO EVIDENCE MUST SEASONABLY GIVE THE GROUNDS.

Trial court cannot be put in error for overruling objections unaided by any grounds assigned, or when objection comes too late.

4. APPEAL AND ERROR ⟞1043(6)—THAT NOTICE OF DEATH WAS DETACHED FROM ANSWERS TO INTERROGATORIES HELD HARMLESS.

In an action on a benefit certificate, that an official notice of death was detached from answers to interrogatories propounded by plaintiff to defendant for its separate introduction in evidence is harmless, where the whole of the answers to which paper was attached was later admitted in evidence without objection.

5. INSURANCE ⟞818(3)—EVIDENCE RELATING TO REINSTATEMENT OF INSURED ADMISSIBLE IN ACTION ON BENEFIT CERTIFICATE.

In an action on a benefit certificate in which issue was the good health of insured at time of reinstatement, all the papers pertaining to the reinstatement, as well as the advice given him by an officer of the local camp of his reinstatement, were admissible in evidence.

6. INSURANCE ⟞818(3) — CERTIFICATE OF CAMP PHYSICIAN AS TO GOOD HEALTH ADMISSIBLE.

In action on a benefit certificate in which issue was good health of insured at time of reinstatement, certificate of camp physician as to his health was admissible in evidence; such certificate being required by constitution and by-laws of order.

7. INSURANCE ⟞818(3)—WHAT DOCTOR TOLD INSURED NOT ADMISSIBLE ON ISSUE OF GOOD HEALTH.

In action on benefit certificate in which issue was good health of insured at time of reinstatement objection to question to physician who examined insured as to whether he told insured what was the matter with him was properly sustained.

8. INSURANCE ⟞818(3)—ON ISSUE OF GOOD HEALTH, THAT BROTHER HAD TUBERCULOSIS INADMISSIBLE.

In action on benefit certificate in which issue was good health of insured at time of reinstatement, evidence that brother of insured had tuberculosis about the time of the reinstatement was inadmissible.

9. APPEAL AND ERROR ⟞926(7)—NOT PRESUMED THAT QUESTION WAS PUT TO REFLECT ON CREDIBILITY OF ONE'S OWN WITNESS.

To reverse court for sustaining objection to question on cross-examination of witness

---

SOVEREIGN CAMP OF WOODMEN OF THE WORLD v. KEEFE 637

for plaintiff, it will not be supposed that purpose of question was to reflect on credibility of defendant's own witness.

**10. WITNESSES** <span>☞</span>270(2) — QUESTION ON CROSS-EXAMINATION HELD NOT MATERIAL TO ISSUE OF GOOD HEALTH OF INSURED.

In action on benefit certificate in which issue was good health of insured at time of reinstatement, question on cross-examination of plaintiff's witness as to whether physician, who examined insured, told witness what was the matter with insured was not material to the issue.

**11. TRIAL** <span>☞</span>46(2)—QUESTION, NOT DISCLOSING MATERIALITY OF EVIDENCE, PROPERLY EXCLUDED.

In action on benefit certificate, in which issue was good health of insured at time of reinstatement, question to witness as to whether physician, who examined insured, told witness what was the matter with insured was improper, where not disclosing to what time examiner had reference.

Appeal from Circuit Court, Jefferson County; H. A. Sharpe, Judge.

Action by Fred Keefe and another against the Sovereign Camp, Woodmen of the World, for a beneficiary certificate issued on the life of Will Keefe and payable to plaintiffs. Judgment for plaintiffs, and defendant appeals. Affirmed.

Plaintiffs stated their cause of action in five counts, the first three being on the beneficiary certificate, count 4 claiming for an account, and count 5 for money received by the defendant to the use of the plaintiff. The defendant answered, setting up the contract and the various provisions of the constitution and by-laws as to the manner of reinstatement after the insured has for any reason been suspended from the order. The charges referred to in the opinion are as follows:

"(1) If the jury believe the evidence, the plaintiff cannot recover under the fourth count of the complaint, and you must find your verdict for the defendant under said count."

(2) Same as 1, but applied to the fifth count.

The defendant offered and examined Dr. Levi as an expert. He testified that he only saw Will Keefe once professionally, which was either on May 2 or May 3, 1918; that he examined him at that time; that he had previously observed Keefe when he was attending other members of the household; that the examination consisted of listening to Keefe's lungs through the stethoscope and concussion (a process of sounding the chest); that when he examined Keefe on May 2 or May 3, 1918, he had tuberculosis in an advanced and easily ascertainable degree; that Keefe died of tuberculosis, on May 3, 1918; and that having died of tuberculosis, he had

the disease on April 16, 1918 (seventeen days before), the date to which Keefe's reinstatement as an insured member is referred.

Dr. C. W. Wright testified, among other things, that he gave Will Keefe a physical examination on April 16, 1918; that "at that time Will Keefe had a cold on his lungs, but otherwise was in good health, so far as I [he] could tell;" that "it is not possible for a man to determine whether a man has tuberculosis without making a microscopic examination of his sputum until he is almost dead positive, and then I don't know that you could then. To be sure there would have to be a microscopic examination of his sputum; there is also a blood test. The safest and the surest and most certain way is to examine the sputum and the blood test. * * * I could not tell that he looked any worse than the last time I saw him a year or two before that. His physical appearance was good; was about as usual. * * * His complexion was good, he had no temperature, and his pulse was about 85. The average man's pulse is about 75, sometimes runs as high as 85 or 90, which I passed as normal with him." There was other testimony by this witness calculated to reflect upon the opinions he expressed in the matter above quoted. There was other evidence tending to show that Keefe's health had not been impaired on April 16, 1918.

The answers by the defendant to the interrogatories propounded under the statute showed that Keefe's reinstatement papers, accompanied by payment, reached the principal office at Omaha, Neb., on April 20, 1918, and that on April 22, 1918, he was entered on the records of the order as a reinstated member.

In the oral charge of the court, to which no exception was reserved, the jury was instructed as follows:

"The jury are the judges of the fact, and have heard the testimony with respect to the condition of Will Keefe's health at the time of this alleged reinstatement; and, as throwing light on the subject, you have the testimony of the physicians. An expert such as a physician, in good standing—his evidence is admissible on questions of that kind, not as being positively binding on the jury, but as throwing light on the question wherein they testify. An expert is supposed to have the peculiar knowledge of the subject on which he is allowed to testify, and his testimony goes to the jury for what it is worth, not to be absolutely binding unless the jury find so, in its opinion and discretion."

C. H. Roquemore, of Montgomery, for appellant. Counsel discusses the assignments of error in connection with the provisions of the constitution and by-laws of the order, but cites no authority in support of his contention.

<span>☞</span>For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Hugh H. Ellis, of Birmingham, for appellee. The court properly refused to direct a verdict for the defendant as to counts 4 and 5. 1 Ala. 246; 30 Ala. 471; 88 Ala. 329, 6 South. 744. Counsel discusses assignments of error relative to evidence, but without citation of authority.

McCLELLAN, J. This action, instituted by the appellees against the appellant, sought recovery on an insurance certificate issued by the appellant to Will Keefe, payable to appellees upon his death while a member in good standing of the order. Keefe was a member of the order, and insured therein for several years. About January 1, 1918, his insurance was forfeited for nonpayment of an assessment. On, to wit, April 16, 1918, within the period stipulated in the laws of the order, the insured was reinstated, one of the conditions to reinstatement being that the member should be in good health at the time of reinstatement. Keefe died on May 3, 1918. The pleadings presented and the parties litigant contested the meritorious issue, whether Keefe was in good health at the time of reinstatement. If not, he was not reinstated, and the beneficiaries under his certificate were without right to recover; and, if he was in good health at the time, there was shown no reason against their right to recover.

[1] It is manifest from a careful consideration of all the evidence bearing on this vital issue that the trial court correctly submitted its decision to the jury, regardless of which party had, under the pleadings, the burden of proof. The question is not so doubtful as to be at all debatable. The opinion evidence of a physician in such circumstances is not, as the trial court instructed the jury, conclusively binding upon the jury. None of appellant's pleas were conclusively proven, and there was evidence supporting the replication.

[2] The assignments of error refer alone to rulings on the admission or rejection of evidence and to the instruction of the jury; and there was no exception taken to the oral charge of the court. Appellant's requested instructions, numbered 1 and 2, respectively, required a verdict "for the defendant" on counts 4 and 5, respectively. There being other counts in the complaint, such requests are bad in form, and were properly refused. City of Birmingham v. Poole, 169 Ala. 177, 180, 52 South. 937, among many others.

[3] A number of the assignments are based on the action of the court in overruling objections to testimony, or motions to exclude testimony, which did not seasonably state any grounds therefor. It would seem hardly to be necessary at this late day again to observe that a trial court cannot be put in error for overruling objections on motion unaided by any grounds assigned, or when the objection or motion comes too late. Rutledge v. Rowland, 161 Ala. 114, 122, 123, 49 South. 461.

[4] The complaint that an "official notice of death" of Keefe was detached from answers to interrogatories propounded, under the statute, by the plaintiff to the defendant for its separate introduction in evidence, is not justified, because: First, demand for the production of this paper was made before the interrogatories were filed; second, the whole of the answers to which the paper was attached, were later admitted in evidence, without objection.

[5, 6] All the papers pertaining to the reinstatement of Keefe as an insured member of the order, as well as the advice given him by an officer of the local camp of his reinstatement, each indicating a contributory step in the process of his reinstatement under the laws of the order, were properly received in evidence over the objection of the defendant. The certificate of the camp physician, attesting Keefe's good health after a physical examination of him, was manifestly admissible in evidence on the issue indicated, such certificate being required by section 117 of the "constitution and by-laws" of the order. The trial court, in admitting elements of evidence of this character, so restricted its probative force, in respect of Keefe's reinstatement, as to deny it the effect of proving that the requisite number of members of the local camp voted, as the constitution required, for the reinstatement of Keefe, thus avoiding the point of defendant's contention that the best evidence of the vote was the minutes of the meeting of the local camp. The certificate of the clerk was, as the court held, distinctly admissible as evidencing the receipt of the money paid by Keefe as a condition to his reinstatement. The authenticity and at least prima facie authority for the acts, thereby illustrated, of the writings purporting to be executed by the officers of the local camp and of the general officers at Omaha, Neb., were established. The fact that they were, in part, communications between officers or agents of the defendant with respect to the reinstatement of Keefe did not, of course, operate to deny their appropriate consideration by the court and jury in determining the question of the reinstatement vel non of Keefe as an insured member.

[7] The court sustained objection to this question propounded by the defendant to Dr. Levi: "State whether or not you told him [Keefe] what was the matter with him?" There was no intimation as to the purpose in the examiner's mind. The real issue, heretofore stated, was with reference to Keefe's state of health at the time of his reinstatement in April, 1918. There was no error in sustaining objection to the question.

[8] Whether a brother of Keefe was suffering with tuberculosis at or about the time of Keefe's reinstatement was not, of course,

serviceable to the proof, in any degree, of what disease Keefe had at the time of his reinstatement.

[9-11] On cross-examination of Mrs. Howell the defendant propounded this question: "Did Dr. Levi tell you what was the matter with Will Keefe?" It is not to be supposed, as there is nothing to indicate it, that the purpose of this question was to introduce evidence reflecting upon the credibility of defendant's own witness, Dr. Levi. If that was not the purpose, the question quoted was not designed to elicit any evidence material to the issue being contested by the parties. Furthermore, the question did not disclose to what time the examiner had reference.

There is no error in the record.

The judgment is affirmed.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.