(87 South. 435)

## ALABAMA MACHINERY & SUPPLY CO. v. ROQUEMORE. (3 Div. 498.)

(Supreme Court of Alabama. Jan. 20, 1921.)

1. **Evidence ⬅472(6)—As to whether title had passed out of plaintiff held properly excluded as being for the court.**

In detinue for an electric elevator installed in defendant's storehouse by a tenant, it was not error to exclude evidence as to whether title had passed out of plaintiff; that being one of the issues to be tried by the judge without a jury.

2. **Witnesses ⬅268(2)—Cross-examination of plaintiff's manager to test his knowledge of facts held proper.**

In detinue for an electric elevator installed in defendant's storehouse by a tenant, where plaintiff's manager had testified that plaintiff had never got the company to accept the elevator, and plaintiff himself did not think that it complied with its contract, it was not error on cross-examination to test witness' knowledge as to noncompliance with the contract by asking what had been left undone that he thought should have been done.

3. **Fixtures ⬅35(2) — Evidence of rescission of contract between tenant and owner of elevator immaterial.**

In detinue for an electric elevator installed in defendant's storehouse by a tenant, evidence as to the rescission of a contract whereby the elevator was installed after defendant had paid the tenant therefor and after he had been ejected *held* immaterial and properly rejected.

4. **Appeal and error ⬅231(3) — Objection to evidence must state grounds.**

In detinue for an electric elevator installed in defendant's storehouse by a tenant, where a contractor was asked as to elevators and their use in installation in buildings, objections to such evidence, not stating grounds, *held* insufficient to present anything for review.

5. **Appeal and error ⬅1040(13)—No reversal for errors in rulings on demurrers to special pleas, where defendant entitled to affirmative charge.**

When the bill of exceptions sets out substantially all the evidence, if it is shown that on the issues made by the complaint and the general issue pleaded defendant was entitled to the general affirmative charge given at his request in that plaintiff was not entitled to recover, though there may have been error in rulings on demurrer to special pleas, the same will not authorize a reversal.

6. **Fixtures ⬅14—Electric elevator in store building held fixture.**

An electric elevator, installed in the landlord's storehouse by a tenant as a substitute for an elevator previously built, the elevator being permanently installed on a cement or concrete foundation, the several floors through which it passed being materially modified so it could not be removed without injury to the freehold, the elevator was a fixture, no attempt to remove it having been made until after the forfeiture of the lease on the part of the tenant.

Appeal from Circuit Court, Montgomery County; William L. Martin, Judge.

Detinue by the Alabama Machinery & Supply Company against H. L. Roquemore, as trustee in bankruptcy, for an elevator and fixtures. Judgment for the defendant, and plaintiff appeals. Affirmed.

Ball & Beckwith, of Montgomery, for appellant.

The property sued for is not a real fixture, but a trade fixture. 188 Ala. 326, 66 South. 54, L. R. A. 1915A, 654; 129 Ala. 521, 30 South. 15, 87 Am. St. Rep. 75; 121 Ala. 336, 26 South. 34, 77 Am. St. Rep. 61; 26 Ala. 496, 62 Am. Dec. 742; 11 R. C. L. 1066, 1069, 1076, 1085. The appellee is not a purchaser or a mortgagee, and her rights as a judgment creditor do not prevail against appellant's reservation of title. Section 3394, Code 1907; Acts 1911, p. 115; 110 Ala. 233, 20 South. 89, and cases supra. The lien for rent does not attach against property not the tenant's, and cannot prevail against reservation of title. Section 4747, Code 1907; 119 Ala. 97, 24 South. 857; 110 Ala. 233, 20 South. 89; 106 Ala. 581, 19 South. 70; 93 Ala. 283, 9 South. 280.

Hill, Hill, Whiting & Thomas, of Montgomery, for appellee.

Appellant's insistence as to error in the pleadings is not sufficient to present same for review. 159 Ala. 254, 48 South. 712; 155 Ala. 175, 45 South. 678; 10 Ala. App. 439, 65 South. 408; 69 South. 604. A chattel permanently annexed to the freehold, which cannot be severed without material injury to the premises, becomes a part of the realty, irrespective of the intention with which it was attached. 80 Ala. 103; 11 R. C. L. 1060; 19 Cyc. 1046. Under the facts in this case the seller cannot recover possession of the property. 24 Colo. App. 74, 131 Pac. 791; 164 Iowa, 8, 144 N. W. 346; 24 R. C. L. 474; 11

---

R. C. L. 1072; 12 Idaho, 352, 86 Pac. 529, 10 Ann. Cas. 107. Where a tenant forfeits his lease, he has not even the right of emblement. 73 Ala. 59; 24 Cyc. 1071. The removal of trade fixtures expires with the termination of the lease. 202 Ala. 525, 81 South. 27; 188 Ala. 326, 66 South. 54, L. R. A. 1915A, 654; 19 Cyc. 1065; 168 App. Div. 112, 153 N. Y. Supp. 728. Landlord's lien is not dependent on attachment. 204 Ala. 295, 85 South. 489; 202 Ala. 342, 80 South. 424; 113 Ala. 596, 21 South. 338; 160 Ala. 363, 49 South. 391.

THOMAS, J. The action was in detinue for an electric elevator installed in defendant's storehouse by a tenant.

On July 6, 1912, the appellee leased to the George B. Wragg Furniture Company, a corporation, the premises in question for a term of five years, commencing October 1, 1912, at the annual rental stipulated. A material part of said lease is the following:

"It is further understood and agreed and a part of the consideration for which above store is leased and we hereby bind ourselves and agree to put in and install at our own expense an electric elevator at store No. 26 So. Court street. Said elevator to cost not less than $1,000.00, and is to be installed and put in operation on or before April 1, 1913. If we fail to put in said elevator by said date, we hereby agree to pay monthly an additional rent of $16.65 per month from October 1, 1912, to the termination of this lease, September 30, 1917."

This lease was subsequently renewed for a period of two years, which renewal contract was not in evidence; but it was proved by the appellee that the rental charge was increased, and that the contract contained no reference to an elevator.

On November 11, 1915, the appellant wrote a letter to the Wragg Company, offering to install an elevator in the premises. This proposal was accepted in writing on its margin by the Wragg Company, and was recorded in the probate office of Montgomery county on June 3, 1919. The appellant proved that this first proposal was not satisfactory to the Wragg Company, who insisted on specifications and terms, and that on November 27, 1915, appellant made a (second) proposal in great detail, which was also accepted in writing by the Wragg Company. Proposal No. 2 referred to proposal No. 1 for its terms of deferred payment, and stipulated that title to the elevator should remain in appellant until fully paid for. The two proposals were signed at about the same time, and were intended to constitute one contract. Proposal No. 2 was never recorded. The elevator was not installed until some time in 1917.

The appellee proved that at some time in 1915 the Wragg Company went into bankruptcy, and that she then claimed as rent something over $400 against the bankrupt estate, and when the elevator was installed in 1917, allowed this $400 as a credit on the rent. She further proved that she sued the Wragg Company in unlawful detainer at some time in 1919, and got possession of the premises on May 19, 1919; and that she sued on the notes for rent and obtained judgment on June 18, 1919, for $850; that this elevator was put in as a part of the consideration of the lease, and Wragg Company was to pay $1,600 per annum; that the elevator sued for (in this case) was never attached or levied on by the appellant.

The appellant's evidence tended to show that it never succeeded in satisfying the Wragg Company with the elevator; that payments were made from time to time in small amounts, but that at the time this action was commenced there was still due a balance of $562.14 of the original purchase price; that this sum was represented by 11 promissory notes, dated March 22, 1919, executed by the Wragg Company, payable in the event the elevator should be made satisfactory; that none of these notes were ever paid; that they contained a stipulation, retaining title in the appellant until all of them should be paid; and one of the notes was recorded in the probate office of Montgomery county on July 3, 1919. The appellant proved that on June 2, 1919, it wrote a letter to defendant's agent, demanding possession of the elevator; and the Wragg Company agreed upon a rescission of the elevator contract (July 10, 1919) after the termination of the lease. Appellant's counsel admits that—

"There are several conflicts in the testimony as to whether or not the appellee had notice of appellant's claim to the elevator, whether or not appellant had notice of appellee's possession of the premises, and whether or not the removal of the elevator would injure the premises."

[1] We will first dispose of the several rulings on the introduction of evidence to which exceptions were reserved. The court did not err in sustaining defendant's objection to the question propounded to Mr. Fischesser:

"Has the title to this property passed out of the Alabama Machinery & Supply Company at any time?"

This was one of the issues to be tried, and the conclusion of fact was to be drawn by the judge sitting without a jury. McMillan v. Aiken, 88 South. 135; [1] Miller v. Whittington, 202 Ala. 406, 80 South. 499; Standard Cooperage Co. v. Dearman, 86 South. 537; [2] Sovereign Camp W. O. W. v. Eastis, 206 Ala. ——, 89 South. 63.

[2] The plaintiff's secretary and manager,

[1] Ante, p. 35.        [2] 204 Ala. 553.

Mr. Fischesser, who, as a witness in its behalf had testified that plaintiff had never "gotten the Wragg Company to accept the elevator, and the plaintiff itself did not think that it had complied with its contract until just before the paper was recorded in June, 1919," was asked by defendant:

"If you had not complied with your contract, tell us what was left undone that you think should have been done."

This was proper, on cross-examination, to test the knowledge of the witness of the fact of noncompliance of the contract by which the elevator was installed. Moreover, if it had been objectionable, no grounds of objection were assigned. B. R., L. & P. Co. v. Saxon, 179 Ala. 136, 59 South. 584; Rutledge v. Rowland, 161 Ala. 114, 49 South. 461; Adams Hdw. Co. v. Wimbish, 201 Ala. 547, 78 South. 901.

[3] The rescission of the contract sought to be shown by plaintiff's letter of July 10, 1919, to George B. Wragg Furniture Company, and the written consent thereto by said Wragg Company (of same date), after the defendant landlord had paid Wragg Company for the elevator and after the latter had been evicted as a tenant and was a bankrupt, was immaterial evidence, and properly rejected by the trial court, on defendant's objection.

[4] Plaintiff did not sufficiently assign grounds of objection to the question asked Mr. Stuart, a contractor of experience, as to elevators and their use or installation in buildings, and of the elevator in question as installed by the Wragg Company or plaintiff in defendant's building. The question, objection thereto, answer, and motion to exclude are exhibited by the bill of exceptions as follows:

"If that elevator is taken away, what would by [be] the effect upon the building?"

The plaintiff objected. The court overruled the objection, and to that ruling the plaintiff then and there duly and legally excepted. The witness answered:

"It would leave three holes that would be undesirable."

The plaintiff moved to exclude the answer of the witness, which motion was overruled by the court, and to that ruling the plaintiff then and there duly and legally- excepted. Nothing was presented for review. Sovereign Camp of W. O. W. v. Keefe, 203 Ala. 636, 84 South. 810; Adams Hdw. Co. v. Wimbish, supra; Rutledge v. Rowland, 161 Ala. 114, 49 South. 461.

Thereafter the witness testified:

"That the joists had been cut in order to make the three holes in the floors, and that to restore them it would be necessary to put in new joists, and to put in new joists it would be necessary to remove the floors; that an elevator was a desirable thing in a store of that kind, and almost a necessity for the good use of the building; that it adds to the value of the building, and could be used in almost any commercial business, and that a store building of the kind in question was generally used for commercial business;" that "the elevator platform or cage might be removed without hurting the building, also the cables, * * * pulleys and gears at the top, also the motor; that the runners seemed to be supporting the tail joists; that there was a runner on each side; that the entrance to the elevator faced the wall, and the hatchway guides were out from the wall midway of the hole; that if the guides were taken away it would not affect the joists that had been cut off; that the joists to which the runners were fastened ran into the wall; that the joists that had been cut had a header on them which was spiked to the tail joists, and that the runners were bolted to the tail joists that were not cut were creating a support for the tail joists; and that the tail joists were carrying the extra burden from the joists that were cut." Jones v. Bell, 201 Ala. 336, 77 South. 998.

The plaintiff's attorney asked the witness:

"With the exception of the joists everything could be removed without affecting the building?"

—and the witness answered that:

"There is some housing all around the well;" that, "it would not be necessary to cut any joists to remove the elevator; that to remove the housing around the elevator well would only affect the appearance of the place, and that the holes would be in the floor whether the elevator was there or not; that the only material damage to the building would be the support that the tail joists get from the guides which they would not get if the guides were removed; and the damage from the floor of the elevator being removed; that the guides were bolted to the joists."

From this and other evidence the real question propounded by the pleading is: Was the elevator as installed in defendant's building a "trade fixture," the title to which was or could be retained, as against its installation and injury by its removal from defendant's building? Otherwise stated by counsel: Was the elevator permanently installed in the building of defendant so that it cannot be removed "without material injury to the premises," when its installation was without notice or knowledge by the defendant? That is to inquire, as installed on defendant's real estate and as a part of the building, was the elevator personal property, the title to which could be retained in and removed by plaintiff against the objection of the defendant?

[5] An answer to these inquiries renders unnecessary a detailed discussion of the pleadings or rulings thereon. Appellant recognizes this in saying:

"We will not undertake a detailed analysis of the pleadings. We submit that a mere examination of the pleas will reveal their vices. * * * The general ·denial of the pleas at least put the burden on appellee, and we submit that * * * she did not carry it."

When the bill of exceptions sets out substantially all the evidence, if it is shown that on the issues made by the complaint and the general issue pleaded the defendant was entitled to the general affirmative charge given at his request, in that plaintiff was not entitled to recover, though there may have been error in rulings on demurrer to special pleas, the same (being without prejudice) will not authorize a reversal. Lawrenceburg Roller Mills Co. v. Jones, 85 South. 719, 720;[3] 1 Michie's Ency. Dig. Ala. Rep. p. 559, § 1029.

The question of trade fixtures was recently discussed in Walker v. Tillis, 188 Ala. 313, 323–326, 66 South. 54, 57 (L. R. A. 1915A, 654), where it is said on authority of Rogers v. Prattville Co., 81 Ala. 483, 1 South. 643, that—

"No precise rule can be given which will determine in all cases whether any given property is a chattel or a fixture. This 'varies with the different relations of parties, and is largely dependent on intention' of the parties as 'shown or inferred.' In that case Stone, C. J., said that there are cases which hold that, when a building is constructed for manufacturing purposes, all the machinery and appliances used in connection with the business, whether attached to the realty or not, become a part of it, and adds that our own court has not gone to this extreme length, as with us mere use, in connection with the business, does not so annex machinery to the realty as to constitute it a part thereof. Intention is more or less a factor in such instances. It often depends upon the intention of the party making the annexation. The precise point at which a chattel loses its character as such and becomes a part of the realty is difficult to define by any fixed rule applicable to all cases."

In Poole's Case, 1 Salk. 368, Holt, C. J. held that a tenant, who was by trade a soap boiler, and had, for the convenience of his trade put up vats, copper boilers, tables, partitions, etc., and paved the back yard, had the right during the term of his lease to remove such fixtures. "But after the term they become a gift in law to him in reversion, and are not removable; that there was a difference between what the soap boiler did to carry on his trade and what he did to complete the house as hearths and chimney pieces," which were held not removable. This is one of the first cases that put the question of trade fixtures of a tenant upon a clear and satisfactory basis (4 Co. Herlakenden's Case, Owen 70, 71); and the rule was stated to be "in favor of trade and to encourage industry," and has ever since been regarded as the original ground for the exceptions as to trade fixtures made by tenants. Bull, N. P. 34; 1 Atk. 477; 3 Atk. 13, 16; Co. Litt. 53a. 1 Roll Rep. 216; Swinb. 132, 345, 346; Moore, 177, 178.

The American courts have added to this reason "given by the English courts one upon which they say the exception is in part founded—that is, the subserviency of public policy; that the intention of the tenant making the annexation was to serve the convenience of his trade, and not to enhance the freehold; that it was the reasonable intention of the tenant to place such trade fixtures upon the land, for the purpose of better enjoying the articles annexed, or of using them in his trade as chattels, and to remove them at his pleasure." Walker v. Tillis, supra; Tillman v. De Lacy, 80 Ala. 103, 106: Humes v. Higman, 145 Ala. 215, 40 South. 128; Middleton v. Alabama Power Co., 196 Ala. 1, 71 South. 461; Hanvey v. Gaines, 181 Ala. 288, 61 South. 883; Grubbs v. Hawes, 173 Ala. 383, 56 South. 227; MacArthur Bros. Co. v. Middleton, 200 Ala. 147, 75 South. 895. The latter case contains the observation that the articles dealt with in Walker's Case were of a very different nature and character, and were designed and used for a different purpose than the buildings in question, and that parties may by contract make them a part of the land, just as they may prevent a house or permanent fixture becoming a part of the freehold.

The elevator in question is not separate and distinct from defendant's building, as it replaced her old elevator therein; nor was there anything about the new elevator so installed as to be peculiar to the trade engaged in by the Wragg Company. In the following cases the trade fixture rule was dealt with: Reynolds v. Shuler, 5 Cow. (N. Y.) 323, distillery fixtures; Cooper v. Johnson, 143 Mass. 108, 9 N. E. 33, iron tank upon a foundation of brickwork and cement used in the business of rendering grease; Merritt v. Judd, 14 Cal. 59, machinery used in mining quartz; Hey v. Bruner, 61 Pa. 87, appliances necessary to the manufacture of hosiery; Kelsey v. Durkee, 33 Barb. (N. Y.) 410, premises used as soda, saleratus, and drug factory and mill, with steam engine and furnace therein; Heffner v. Lewis, 73 Pa. 302, iron rails laid in a track by a tenant in a tunnel in a coal mine in the conduct of mining, digging, and carrying away coal; Shellar v. Shivers, 171 Pa. 569, 33 Atl. 95, casings in an oil well, derrick, and other appliances used in drilling and operating such oil well; Updegraff v. Lesem, 15 Colo. App. 297, 62 Pac. 342, shafthouse and machinery erected and used in the business of working a mine; Hanks v. Boston & Albany Rd., 147 Mass. 495, 18 N. E. 218, a "planked" way on the premises used as a box factory, planing mill, and lumber yard; Dostal v. McCaddon, 35 Iowa, 318, a vault built on its own foundation

---

[3] 204 Ala. 59.

for banking purposes; McCall v. Walter, 71 Ga. 287, held a mortgage on stock of goods and fixtures in a storehouse extended to show cases, safe, platform scales; O'Brien v. Kusterer, 37 Mich. 289, cupboard, bowling alley ways and racks attached to saloon; Lacey v. Giboney, 36 Mo. 320, 88 Am. Dec. 145, steam engine and boiler to run a chair factory and a corn mill; Thompson Ry. Co. v. Young, 90 Md. 278, 44 Atl. 1024, applied to a scenic railway and its foundations on brick piers. Such was the character of the trade fixtures dealt with in Walker v. Tillis, supra.

[6] The Wragg Company agreed with its lessor that the elevator would remain as a part of the realty, and allowance was made the tenant by the landlord for the installation of the same. However this may be, the nature of the fixture, its annexation to the realty, the effect of its removal upon the freehold, whether it was added as a substitute for the elevator theretofore belonging to the landlord or as compensation for the use of the premises—as applied to this evidence—would forbid its removal to the impairment of the premises and to the detriment of the owners of the building and the land on which it was erected. After all that may be said, the elevator was of general use in the building for whatever purposes to which the building might be put, not peculiar to or connected with the business conducted therein by the Wragg Company, as tenant, as was the case with the fixtures dealt with in foregoing cases. It was permanently installed on a cement or concrete foundation, and the several floors through which it passed materially modified. It could not be removed without serious injury to the freehold; was added as a substitute for a smaller one owned by defendant, and which plaintiff removed; was intended and received as part compensation for the use of the premises and the elevator removed, and no attempt was made by plaintiff to remove the last elevator until after forfeiture of the lease on the part of the tenant, its eviction and bankruptcy. Puffer Mfg. Co. v. Kelly, 198 Ala. 131, 136 (1), 73 South. 403.

Moreover, the mixed question of law and fact—whether a chattel had become a part of the realty—was tried by the court without a jury on oral testimony. Hackett v. Cash, 196 Ala. 403, 72 South. 52; Andrews v. Grey, 199 Ala. 152, 74 South. 62; Ray v. Watkins, 203 Ala. 683, 85 South. 25. The judgment of the circuit court was in accord with the rules of law obtaining in this jurisdiction as to trade fixtures and permanent fixtures attached to the freehold (Ross v. Perry, 105 Ala. 533, 16 South. 915), and is affirmed.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.