# Humes *v.* Higman and Higman *v.* Humes.

*Bill by Purchaser at Foreclosure Sale to Quiet Title; Cross-bill by One Respondent for an Accounting for Property Converted.*

[DECIDED JAN. 30, 1906, 40 So. REP. 128.]

1. *Fixtures; Machinery.*—A saw mill and machinery connected therewith, and not adapted to other use, intended to be used permanently, are fixtures, as between the mortgagors and mortgagees of land.

2. *Quieting Title; Affirmative Relief by Cross Bill; Statutes.*—Where a mortgagee, who has purchased at foreclosure sale, files a bill to quiet and perfect title, under Sec. 720 of Code, 1896, a defendant may by cross bill obtain affirmative relief, and in this case hold complainant to a personal liability for the conversion of movable machinery on the mortgaged premises.

3. *Partnership; Use of Individual's Land for Partnership Purposes.*—The use of land belonging to an individual member of a partnership, by the partnership, does not render the land partnership property.

4. *Same; Sale of Partner's Interest; Liability of Purchaser for Previous Debts.*—The purchaser of a partner's interest in a partnership business is not liable for previous partnership debts, unless he assumes the same in his purchase.

APPEAL from Morgan Chancery Court.

Heard before Hon. W. H. SIMPSON.

Bill by Milton Humes against John Higman, et al., seeking to quiet his title to certain lands and fixtures therein described, he being a purchaser at foresclosure sale, under the terms of the mortgage from Higman, and others to him. Higman filed an answer and cross bill seeking to hold Humes for a conversion of certain movable chattels alleged to have been converted by the sale and purchase of same. From the final decree, each appeal and assign the same as error.

C. C. HARRIS, HUMES, SHEFFY & SPEAKE and LAWRENCE COOPER, for Appellant on direct appeal, and for Appelle on cross appeal.—The saw mill and attachments were fixtures.—1 Jones Mortgages (5th Ed.) Sec. 429, 428, 444; 80 Ala. 103; 83 Ala. 155; 122 Ala. 575; *Feder v. Van Winkle,* 51 Am. St. Rep. 628; *Morotock Ins. Co. v. Rodefer,* 53 Am. St. Rep. 346; *Clark v. Hill,* Ib. 574; *Gavis v. Beckford,* 13 Am. St. Rep. 554.

The court erred in holding that Higman did not assume the original purchase money debt.

The court erred in holding that the claim preferred by the amendment of June, 1901, to the bill was barred by the statute of limitations.—*Carver v. Eads,* 65 Ala. 190; *Develope Co. v. Short,* 101 Ala. 333; *Coleman v. Hatcher,* 77 Ala. 217; *Scott v. Mynott,* 24 Ala. 145; *Abercrombie v. Mosely,* 9 Port. 145; Sec. 2805, Code 1896.

The court had jurisdiction to decree a personal judgment, as it acquired jurisdiction of the main subject matter by the bill, and it will proceed to adjust all matters in controversy.—*Ware v. Russell,* 70 Ala. 174; *Wilkerson v. Roper,* 74 Ala. 140; *Houston v. Faul,* 88 Ala.

232; *Farris v. Dudley*, 78 Ala. 124; *Kilgore, v. Kilgore*, 103 Ala. 614; *V. & M. M. Co. v. Hale*, 93 Ala. 542.

The amended bill was not bad for multifariousness.— *Lyons v. McCurdy*, 90 Ala. 497.

E. W. GODBY, for Appellee on original appeal, and appellant on cross appeal.—The property converted was not a fixture.—*Ins. Co. v. Caldwell*, 95 Ala. 77; *Kendall v. Hathaway*, 30 Atl. 860; *Crane Iron Works v. Wilker*, 45 Atl. 1033; *Swift v. Thompson*, 21 Am. Dec. 724; *Tillman v. DeLacy*, 80 Ala. 107; *Nelson v. Howison*, 122 Ala. 573.

The purchase money was not a partnership debt, and Higman was not bound for it.—*Robinson v. Miller*, 153 Ill. 244; *Hatchett v. Blanton*, 72 Ala. 435.

John Higman was released from any debt by taking H. C. Higman alone for the same.—*Elyton Co. v. Hood*, 121 Ala. 373; *Montgomery v. Keppel*, 7 Am. St. Rep. 126. The debt was discharged by collusion.—*McDonald v. Neilson*, 14 Am. Dec. 455; *S. H. B. & L. Asso. v. Riddle*, 29 So. Rep. 667.

The statute of limitation bars complainant's right of recovery.—Sec. 2808, Code 1896; *Holley v. Coffey*, 123 Ala. 406.

The respondent was entitled to relief under his cross bill.—*Dean v. Elyton Co.*, 113 Ala. 276.

A sale under execution or by foreclosure extinguishes the lein, whether the entire debt secured be satisfied or not.—*Bank v. Elliott*, 125 Ala. 646. Higman by his intervening mortgage acquired rights paramount to Humes.—*Haralson v. George*, 56 Ala. 959; *Swann v. Gaston*, 87 Ala. 473.　　　　　　　　　　　　:

HARALSON, J.—1. On the former appeal, the equities of the original bill, assailed on demurrer, were fully sustained. In its final decree the court holds that the complainant was entitled to relief under the original bill; that the evidence sustained the averments that it was not the intention of the parties in making the agreement of September 10, 1905, or by the foreclosure proceedings of complainant's mortgage, made in pursuance

of said agreement, to discharge and release the lien of the first mortgage to complainant and others, but was intended merely to effectuate an extension of the debt of the defendant H. C. Higman to complainant; that complainant Humes did not thereby lose his priority over the lien of the junior mortgage to John Higman, who acquired no right, nor suffered any detriment by reason of the transaction between the complainant and said H. C. Higman, and that John Higman did not, by virtue of his mortgage from H. C. Higman, of October 7th, 1889, nor by virtue of the transaction between complainant and H. C. Higman, and the chancery proceedings in consummation thereof, acquire any right, title or encumbrance in and to said real estate, which is superior to the title of complainant. The title to complainant was confirmed and quieted and vested absolutely in him. We find no fault with the conclusions of the court, and it seems supported by the evidence and the manifest intention of the parties.—*Higman v. Humes,* 127 Ala. 404, 30 South. 733.

2.   The main controversy in the case arises over the question whether or not the saw mill and machinery on the land are fixtures, and passed to the complainant by the original mortgage; or whether they are personal property so as to render the complainant liable for their conversion, as John Higman, by his cross-bill, seeks to do. The court below was of the opinion that the machinery mentioned in the pleadings, and especially in the cross-bill of John Higman, was not a part of the land, and that complainant Humes was chargeable therewith. In this, we apprehend, the court fell into error.

No precise rule can be laid down, applicable to all cases, defining the boundary between movable chattels from immovable fixtures. It varies with the different relations of the parties, and is largely dependent on their intention either express or implied.—*Rogers v. Prattville Mfg. Co.,* 81 Ala. 483, 1 South. 643, 60 Am. Rep. 171.

In *Tillman v. DeLacy,* 80 Ala. 106, it was said: "The permanency of the attachment does not depend on the strength, or force, or manner of the annexation to the freehold, so much as upon its constancy, and upon the use to which the attached chattel is adapted, the purpose

for which designed, and the intention of the party in at-
taching it. The current of modern decision is, 'in favor
of viewing everything as a fixture, which has been at-
tached the realty with a view to the purpose
for which it is held or employed, however slight
or temporary the connection between them.' 2 Smith's
Leading Cases, 221. The general tendency of decisions
regards the use for which the chattel is designed, its
adaptability to the part of the realty where it is placed,
and the intention of the parties, whether for temporary
use, or a permanent accession to the freehold, as a lead-
ing test."

In 1 Jones on Mortgages, § 429, the author observes,
"The intention with which the article is attached to the
realty, whether for temporary use or for permanent im-
provement, has within certain limits quite as much to do
with the determination of the question whether it has
thereby become a permanent fixture, as has the way and
manner in which it is attached. In the modern cases the
intention with which a chattel is attached to the realty
has become more and more the decisive test whether or
not the chattel has become a part of the realty. If the
article is something necessary for the proper enjoyment
of the estate, it may be presumed that it was annexed
for its permanent improvement, and therefore, that it
goes to the benefit of the mortgagee. The fixtures may
be so adapted to the building in which they are placed,
and to the purpose for which the building is to be used,
as to show clearly that they were designed to be perma-
nent." Such, for instance, as the fixtures in a manufac-
tory necessary for furnishing the motive power, or for
the proper carrying on of the business, etc. As sustain-
ing the text, many decisions from the different states,
including Alabama, are cited in the note.

It appears from the evidence that the bulk of the ar-
ticles were put there with the intention of being used
permanently, or as long as there was necessity for their
use, in connection with the saw mill, and that the
grounds and buildings were not adapted to any other use
than saw mill purposes; that these articles were neces-
sary and used as parts of the saw mill machinery, and

dependent upon each other for the operation of the mill. A. D. Jarvis, for instance, a witness for the defendant, on his cross-examination by complainant, said: "The building in which this machinery was placed and to which it was attached, was erected for the purpose for which it was used, that is, for operating the saw mill; it would not be properly adapted for any other use than for saw mill purposes. It was a permanent building." He also testified, that the machinery which he had testified about that was not attached to and a part of the saw mill, was a double surfacer, a matcher, a dry kiln and a re-saw machine, and that all the balance was in connection with the saw mill. All those, except probably, the dry kiln, he stated were necessary to the saw mill, were in the building, and the saw mill could not do saw mill work without them. As to the dry kiln, he stated it was not a necessity. Several of the witnesses for the complainant testified substantially to the same thing, and some of them that the dry kiln was affixed to the land as a part of it, and other evidence for the defendant tended to corroborate them. On the whole, the evidence is reasonably satisfactory, that all the machinery connected with the mill, under the principles announced, was attached or appended to it in such a way as to make it fixtures, with the exception of a lot of machinery stored in an old store house, consisting of odds and ends, only valuable, as the evidence of a number of witnesses shows, for scrap iron. It is not pretended that the lot of old machinery had any connection proper with the saw mill. To such of this old scrap machinery as it may appear the complainant disposed of or converted to his own use, he is properly chargeable.

3. It may be added, as much has been said on the subject, by the defendant, that the fact that the mill site was subject to overflow from the river, and was unfavorable and unsuited for a permanent enterprise of this character, and that the buildings were not of the most permanent and suitable character, has but little if any weight, in determining the character of the machinery on the lot and in the buildings. The witnesses differ as to these matters, some stating that the lot and improve-

ments were suitable, and others that they were not; but whatever may have been the character of the site and the buildings erected, they were such as the parties choose as suitable to the purposes they had in hand, and whether they might not have acted more wisely in selecting the lots and erecting the buildings, cannot be made a test as to whether the machinery became fixtures, as a part of the realty or was personal chattels. If the parties had established their mill on the banks of a river subject to overflows, as they did in this case, or had established it near the crater of a live volcano, and attached their machinery thereto in such a manner as to make it fixtures to the realty, could it be said that owing to the unsuitableness of the site for the mill, they did not intend to make the machinery fixtures? What they did must be looked to as displaying their intentions, whether they acted with good business sense or not.

4. The defendant, John Higman, seeks by his cross-bill to charge the complainant with the value of the old and unfixed machinery; for this purpose, the cross-bill was properly sustained by the court, and under it the complainant may be held to a personal liability for such part of said machinery, if any, as it may be shown he disposed of or converted.—Code 1896, § 720; 3 Brick. Dig. 383, § 253.

5. The complainant seeks to hold John Higman liable for the balance of his debt remaining after the land mentioned in the bill, when sold at foreclosure sale under the H. C. Higman mortgage, was not paid thereby. This claim proceeds on the averments of the bill, that H. C. Higman, George E. Smith and Newton B. Hall, were the original owners of the land in question; that they purchased the same for partnership purposes and that thereupon John Higman purchased the interest of said Smith and N. B. Hall in this partnership and agreed with them to pay all the partnership debts, including as a part thereof the original purchase money for the land. That John Higman ever made such agreement is denied by him as well as H. C. Higman. John Higman, it is shown, did purchase the interest of said Smith and Hall in said partnership. N. B. Hall de-

posed in his direct examination, that said Higman, when he purchased his and Smith's interest in the firm, as a part of the consideration therefor assumed the payment of the balance of the indebtedness due for the land to complainant and others. But, on his cross-examination, he distinctly states that he was not present when said Higman bought said Smith's interest; that the trade was made between them in Michigan, when witness was in Alabama and that when he stated that said Higman assumed said indebtedness, the statement was made from hearsay; that he never saw any writing or evidence of the trade, and John Higman never told him about it; that of his own knowledge, he did not know any thing about whether John Higman bought all the interest of Smith in the firm, and as a part of the consideration for said purchase, agreed to pay the debts of the old firm, or the balance of the purchase money on the land. He makes the same statement touching the sale of his own interest to said Higman, having stated that he did not sell directly to him, but that he had sold his interest to Pearley W. Hall, and Higman acquired his interest from Pearley W. Hall.

John Higman testified that he purchased the interest of George E. Smith in the saw mill in the spring of 1889, at which time he became interested with H. C. Higman and N. B. Hall; that the land was purchased early in 1888, and there was no partnership formed at that time; that when H. C. Higman executed his mortgage to witness, said H. C. Higman was the sole owner of the mill property, including the machinery; that he did not assume the one-third partnership indebtedness of G. E. Smith; that the purchase money debt for the land never became the debt of any partnership of which he was a member and no such debt was mentioned on the books of the company as a partnership liability, and that he did not make any agreement between himself and others to pay any debts of the partnership or of the members thereof, other than those shown by the books of the concern.

H. C. Higman testified that the land was purchased in January, 1888, and the partnership had not been formed

at that time; that he, H. C. Higman, at the time he executed his mortgage to John Higman, was the sole owner of the Higman saw mill and all the machinery and appurtenances; that the partnership had dissolved immediately preceding the giving of this mortgage by him to John Higman and witness had previously owned a one-third interest in the partnership; that John Higman took the place of E. G. Smith in the partnership between witness, Smith and Hall; that the lands included in his mortgage to Humes and John Higman were deeded to the individuals composing the firm, before a partnership was formed; that the purchase money involved in this suit never become the debt of any partnership of which he was a member, and no such entry was ever made on the books of the Alabama Land Company or the Alabama Lumber & Fruit Packing Company, and that he kept the books of the company and was familiar with its business.

There is a vast amount of evidence introduced in various shapes,—record evidence of partnership in other causes as well as parol,—to show that John Higman assumed this land debt, and agreed to pay it, at the time he bought out Smith's interest in said partnership. To review it as counsel on each side have done, would extend this opinion to an extraordinary and unprofitable length. The chancellor held, to quote from his opinion, that, "the alleged purchase money debt, which is preferred against John Higman by one of the amendments of the bill, was not a partnership debt. The mere fact of the use of the land by the firm does not make it partnership property. As was said in *Hatchett v. Blanton*, 72 Ala. 433, it is not an uncommon occurrence that a partnership uses the property of its several members, or of a preceding partnership but in the absence of any agreement that the property shall be joint property, its title and character is unchanged." To the same effect see *Robinson Bank v. Miller*, 153 Ill. 244, 38 N. E. 1078, 27 L. R. A. 449, 46 Am. St. Rep. 883. The evidence of the Higmans is direct and positive and has not been overcome by the evidence offered by complainant. To charge John Higman with this land debt, even if it were

a partnership liability, the fact that he bought the interest of Smith in the partnership would not be sufficient of itself, in the absence of evidence that he assumed it as such, and agreed to pay it. As a purchaser of partners interest he could be required to do no more than comply with the terms of his purchase; and if he did not agree to pay the partnership debt he cannot be compelled to do so by a creditor of the old firm. He simply agreed, as the evidence tends to show, to be liable for the debts of the firm so far as the books showed them, and this was done.—17 Am. & Eng. Law (1st Ed.) 112, 1115, 1116.

In this decision we concur with the court below. The evidence of the two Higmans is direct and positive to sustain it.

The foregoing covers all the material questions in issue necessary to a full settlement between the parties on another trial.

The decree in the main case, number 868, must be reversed in part and affirmed in part; and the decree of the cross-appeal, case number 868a in which John Higman is cross-appellant is affirmed.

868 reversed in part and affirmed in part.

868a, affirmed.

All the justices concur.