# Staunton

DANVILLE HOLDING CORPORATION AND R. C. CLEMENT, TRUSTEE v. JAMES WILLIAM CLEMENT, TRUSTEE IN DEED OF ASSIGNMENT FROM J. M. WALTERS.

September 10, 1941.

Record No. 2393.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and Spratley, JJ.

224

The opinion states the case.

*Crews & Clement,* for the appellants.

*Malcolm K. Harris,* for the appellee.

SPRATLEY, J., delivered the opinion of the court.

This is an action for a declaratory judgment under the provisions of chapter 254A, Virginia Code 1936, to determine whether, under the circumstances of this case, certain machinery and equipment, installed for use in a building on premises subject to a prior mortgage, are fixtures annexed to the realty and subject to the mortgage, or personalty free from the lien.

About twenty-five years ago there was erected in the city of Danville, Virginia, a brick building for use as a warehouse and auction center for the sale of tobacco. The interior was later remodeled in part and the building was then occupied by the Dan City Silk Mills, Inc., for the manufacture of silk cloth. This silk corporation built an addition to the structure, doubling its size

and capacity. Its floors were of wood and concrete, with about 20,000 square feet of floor space on the main floor and 10,000 square feet in the basement.

In 1933, the silk mills, being unable to operate profitably, executed a general deed of assignment for its creditors. At that time, the Hughes Memorial School held a first mortgage on the property and certain other bondholders were secured by a second mortgage. The second mortgage bondholders organized the Danville Holding Corporation, which purchased the building and premises at a sale under the second mortgage, assuming the payment of the first mortgage.

The Danville Holding Corporation, hereinafter referred to as the appellant, thereupon leased the premises to a new silk manufacturing concern which operated thereon from 1933 until 1936 or 1937. After that, the holding corporation rented the building for use as a skating rink.

On November 16, 1937, the holding corporation sold and conveyed the land and the building in fee simple to J. M. Walters. On the same date, Walters and wife executed a deed of trust as a first lien upon the property to secure the Hughes Memorial School in the sum of $18,720 and a second deed of trust to secure the Danville Holding Corporation purchase money notes aggregating $9,280. The $18,720 was the amount remaining due on the former mortgage executed by the Dan City Silk Mills. It was provided in the second mortgage that the debt thereby secured should be repayable at the rate of $1,280 in 1943, $4,000 in 1944, and $4,000 in 1945. No interest was to accrue on the debt prior to January 1, 1939; the rate thereafter to be 4% per annum.

Walters, prior to the purchase of this property, had for a long time been operating a bakery business in Danville in rented premises. Within two months after his purchase, he moved his bakery business to this newly acquired property. He brought to it bakery machinery from his former place of business and purchased and installed

new machinery and equipment of the value of $18,000. One piece of the new machinery, the oven, hereinafter mentioned, cost $7,250. After altering the interior of the building to suit his machinery and his business, he used the building and equipment therein for manufacturing bakery products until July 23, 1940. On the latter date, because of financial difficulties, he executed a general deed of assignment to J. W. Clement, trustee, for the benefit of his creditors. At the time of this assignment, Walters owed the Hughes Memorial School about $16,000 on the first deed of trust and the Danville Holding Corporation the whole of the principal sum of $9,280, with interest thereon.

J. W. Clement, the trustee in the deed of assignment, claimed certain of the machinery and equipment as personalty belonging to his assignor. The trustees in the two deeds of trust and the beneficiaries therein asserted title to the same machinery and equipment as real fixtures.

The controversy does not relate to the heating plant, electric fixtures, wires, water pipes, boilers, furnaces, stokers, or similar fixtures, attached to the building when originally constructed or subsequently placed therein; nor to the ownership of unattached personal fixtures carried on the premises by Walters, such as his office desk, adding machines and trucks. By stipulation between the parties, the machinery involved was described as follows:

"High-speed mixer, fastened to the concrete floor with bolts, both in the motor and in mixer, with pipe upright supports fastened to the floor with floor flanges and screws supporting a scale, to which the flour is carried from a bin by a conveyor; also attached to this mixer is an automatic water scale, fastened to the concrete floor with flloor flange and bolts; all of which is connected to coils and switch box by pipe conduits.

Two-pocket dough-divider, fastened to the concrete floor by lag screws on both ends.

Dough rounder, fastened to the concrete floor by lag screws on both sides.

Proofer, sitting on channel iron frames on the floor.

Bread moulder, sitting on four cast iron legs.

Dough break, sitting on legs.

Low-speed mixer, sitting on the floor and attached to column by pipe conduit to motor.

'Champion' proof box, fastened to concrete floor by lag screws in sides and uprights in center of box, on top of which is an automatic moisture control, connected to steam line in building.

'Peterson' 15-tray oven which is sitting on an angle iron frame. The drive of the oven is bolted to the concrete floor with lag bolts. Attached to the oven is an automatic oil burner, attached to concrete floor with floor flangers and screws, with pipe connections extending through the floors. This oven has a steam connection to main line, connecting tubes in the oven; also has a vent or chimney connected to oil burner, and one connected to the oven itself. On the right side of the oven is a steam trap and pipes extending from oven through concrete floor to return line.

'Battlecreek' wrapping machine and slicer, sitting on bolts extended to wooden floor.

Revolving cake oven sitting on floor, with main shaft of revolving table anchored to floor and various pipe connections to hot water tank and pump extending through the floor.

'Reid' three-speed cake mixers, sitting on floor and attached by pipe conduit extending down wall to switch box and through concrete floor.

Pie machine, sitting on wooden blocks, delivering by conveyor to table.''

The deposition of J. M. Walters was offered as that of the sole witness. He testified that the building was in bad shape when he purchased it; that he had to fix the floors, to plug up holes therein, and to cut off bolts that were sticking through where machinery of the silk mills

had been formerly placed. He said that there was no bakery machinery in the building when he took it over, although there were certain motors on the main basement floor; and that he put in new stokers for the boilers and installed the necessary machinery and equipment for the purposes of a modern bakery plant. As to the nature of the machinery, his testimony was to the effect that the high-speed mixer weighed 3,000 pounds and was fastened securely to the floor because of its vibration under operation from electric power; that the oven weighed between 5,000 and 6,000 pounds, and that it would have to be dismantled at a cost of at least $700 before it could be removed from the building.

On the question of his intended use of the building, the record shows that Walters, on cross examination, testified as follows:

"Q. When you negotiated the purchase of the building, you intended to move your bakery plant from your Craghead Street location and enlarge your business, did you not?

"A. Yes, sir.

"Q. What was it necessary for you to do, in order to make that building suitable for the conduct of a bakery plant?

"A. Well, I had to put stokers in there on the boiler and run steam lines and water lines and electric wires— change it all the way around."

The learned chancellor of the trial court, after hearing the evidence and personally viewing the premises and machinery, entered a decree on September 5, 1940, holding that the machinery involved was personalty, and that the title thereto was vested in J. W. Clement, trustee. The Danville Holding Corporation and R. C. Clement, trustee in the second deed of trust, obtained this appeal from that decree.

On September 6, 1940, the trustees under the first deed of trust sold the real estate without the equipment described in the stipulation, at public auction, for $17,025,

an amount sufficient to satisfy the lien of that deed of trust and the expenses of the sale. The machinery and equipment were then sold by the trustee in the deed of assignment, at public auction, for the sum of $5,450. The disposition of this fund awaits our decision here.

The Hughes Memorial School is no longer interested in this proceeding, its debt having been satisfied from the proceeds of the sale of the building apart from the machinery.

This case presents a mixed question of law and fact. No principle of equity is involved. The sole question of law is that of the law of fixtures as between a mortgagor and a mortgagee of land,—the trustee here standing in the position of the mortgagor. It is not necessary, therefore, to enter into a discussion of the general doctrine of fixtures as between landlord and tenant, vendor and vendee, heir and executor, or any other relationship of the parties different from that here.

The general course of modern decisions in American courts no longer follows the old common law doctrine that the mode of annexation, slight and temporary, or immovable and permanent, is the single criterion for determining the character of chattels as fixtures. Today, emphasis is placed upon the nature of the article and upon the uses and purposes for which it is held or employed. The method of the annexation to the realty receives slight consideration and then only as a circumstance from which the intention of the annexor may be deduced.

This later rule is due to great advances in the science of mechanical engineering, bringing on great changes in industrial conditions, and creating a situation in the manufactories in which a building is only one of the incidents or accessories of a manufacturing plant considered as a unit.

It is difficult, if not impossible, to frame any precise rule to determine whether an article used in connection with realty is to be considered a fixture or not

a fixture. Each case must be decided according to its particular facts and circumstances. Certain general rules to determine the question, however, have been adopted by the great majority of our courts.

In the absence of any specific agreement between the parties as to the character of a chattel placed upon the freehold, the three general tests are as follows: (1) Annexation of the chattel to the realty, actual or constructive; (2) Its adaptation to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) The intention of the owner of the chattel to make it a permanent addition to the freehold.

While, under the first test, there must be actual or constructive annexation, the method or extent of the annexation carries little weight, except insofar as they relate to the nature of the article, the use to which it is applied and other attending circumstances as indicating the intention of the party making the annexation.

The second test—adaptation of the chattel to the use of the property to which it is annexed—is entitled to great weight, especially in connection with the element of intention. If the chattel is essential to the purposes for which the building is used or occupied, it will be considered a fixture, although its connection with the realty is such that it may be severed without injury to either.

The intention of the party making the annexation is the paramount and controlling consideration. The test of intention is given a broad signification. It does not imply a secret, undisclosed action of the mind of the owner of the property. The intention need not be expressed in words; it may be inferred from the nature of the article affixed, the purpose for which it was affixed, the relationship of the party making the annexation and the structure and mode of annexation. 22 Am. Jur., Fixtures, section 6; 26 C. J., Fixtures, sections 2 and 3; 11 R. C. L., Fixtures, section 6.

"If the proprietor of the land himself annexes the chattels, a doubt as to his intention to annex them per-

manently will in most cases be resolved in favor of such intent, upon the theory that his design is to place permanent improvements upon his property, which will enhance its usefulness and consequently its market value. Such fixtures are in general real fixtures and become a permanent part of the land or buildings to which they are attached." 1 Minor on Real Property, Ribble (2d Ed.), section 36.

In Virginia, the foregoing principles have long been well established. In *Green* v. *Phillips* (1875), 26 Gratt. (67 Va.) 752, 21 Am. Rep. 323; *Shelton* v. *Ficklin* (1880), 32 Gratt. (73 Va.) 727, they have been admirably stated, and in *Morotock Ins. Co.* v. *Rodefer,* 92 Va. 747, 24 S. E. 393, 53 Am. St. Rep. 848; *Haskin Wood Vulcanizing Co.* v. *Cleveland Ship-Building Co.,* 94 Va. 439, 26 S. E. 878; *Carolina Cotton and Woolen Mills* v. *Commonwealth,* 138 Va. 71, 121 S. E. 65, they have been specifically approved and affirmed.

The first two cases involved machinery and equipment in connection with manufacturing plants, one a sash and door factory and the other a flour mill. In both cases the machinery and equipment could be removed without serious injury to the buildings in which it was located. There was no agreement between the parties that it was to remain personalty. In holding that it became a part of the realty and subject to mortgages thereon, it was said in each case:

"The true rule deduced from all the authorities seems to be this: That where the machinery is permanent in its character and essential to the purposes for which the building is occupied, it must be regarded as realty, and passes with the building; and that whatever is essential to the purposes for which the building is used must be considered as a fixture, although the connection between them is such that it may be severed without physical or lasting injury to either."

The overwhelming weight of authority is in accord with the principles followed in Virginia.

In *Hopewell Mills* v. *Taunton Sav. Bank,* 150 Mass. 519, 23 N. E. 327, 15 Am. St. Rep. 235, 6 L. R. A. 249, we find it stated: "In this Commonwealth it has been said that 'whatever is placed in a building subject to a mortgage, by mortgagor or those claiming under him, to carry out the purpose for which it was erected, and permanently to increase its value for occupation or use, although it may be removed without injury to itself or the building becomes part of the realty.' " (Citing cases.)

In *Parsons* v. *Copeland,* 38 Maine 537, it was held that looms, carding machines, pickers, and spoolers put into a building erected and used for a mill, were real estate.

In *Alwes* v. *Richheimer,* 185 Ark. 535, 47 S. W. (2d) 1084, seats, fans, picture machine, pipe organ and drop curtain, attached to a theatre, were held to be fixtures covered by mortgage of the realty, although not specifically enumerated.

To the same effect, see *Humes* v. *Higman,* 145 Ala. 215, 40 So. 128; *First State and Sav. Bank* v. *Oliver,* 101 Ore. 42, 198 P. 920; *Prudential Ins. Co.* v. *Guild* (N. J. Chy.), 64 A. 694; *Equitable Guarantee and Trust Co.* v. *Knowles,* 8 Del. Chy. 106, 67 A. 961; *Potter* v. *Cromwell,* 40 N. Y. 287 (1 Hand.), 100 Am. Dec. 485; *Cavis* v. *Beckford,* 62 N. H. 229, 13 Am. St. Rep. 554; *Ottumwa Woolen Mill Co.* v. *Hawley,* 44 Iowa 57; *Jenkins* v. *Floyd,* 199 N. C. 470, 154 S. E. 733, 70 A. L. R. 1125; *Bass* v. *Southern States Bottle Co.,* 17 La. App. 304, 136 So. 159; *Solter* v. *MacMillan,* 147 Md. 580, 128 A. 356; and *Teaff* v. *Hewitt,* 1 Ohio St. 511, 59 Am. Dec. 634.

The stated general test were specifically approved in the following cases, where, however, the machinery and equipment therein involved were held to be personal property because of evidence showing a clear intention to treat it as such. *Snuffer* v. *Spangler,* 79 W. Va. 628, 92 S. E. 106, L. R. A. 1918E, 149; and *Tifft* v. *Horton,* 53 N. Y. 377, 13 Am. Rep. 537.

█ The great majority of the courts make no distinction between the character of machinery, as real or per-

sonal fixtures, placed in a building before the execution of a mortgage against the freehold and that placed therein subsequent to the execution of a mortgage. The character of a fixture is determined by the law of fixtures; that is, from the external indications which show whether or not it belongs to the building as an article designed to become part of it, and to be used with it, to promote the object for which it has been erected, or to which it has been adapted and devoted. This is to be generally found from the facts existing at the time the machinery is installed in the building, its manner of installation, its purpose, and the intention of the annexor, unaffected by the existence of a prior or subsequent lien against the premises. *Southbridge Sav. Bank* v. *Mason,* 147 Mass. 500, 18 N. E. 406, 1 L. R. A. 350; *Langdon* v. *Buchanan,* 62 N. H. 657; *McRea* v. *Central Nat. Bank,* 66 N. Y. 490; *Lord* v. *Detroit Sav. Bank,* 132 Mich. 510, 93 N. W. 1063; *Equitable Guarantee and Trust Co.* v. *Knowles, supra; Bass* v. *Southern Bottle Co., supra;* and *Solter* v. *MacMillan, supra.*

"It may be stated as a general rule that where their annexation to land is made under such circumstances as to stamp chattels with the attributes of fixtures, it makes no difference that such annexation is made subsequently to the execution of a mortgage; as between the mortgagor and the mortgagee they become subject to the lien of the mortgage, unless the mortgagor and mortgagee agree that although affixed to the realty, they may retain their chattel nature." 11 R. C. L., Fixtures, section 18.

"Generally, any machinery that is necessary to the operation of a mill or factory is subject to a prior real estate mortgage on the premises executed by the owner." 41 A. L. R. 608 and 88 A. L. R. 1116.

In the test to determine the character of machinery as real or personal property, we perceive no distinction between that placed in a factory erected for a specific manufacturing purpose and like machinery placed in a building constructed for an entirely different purpose,

but thereafter converted to a use for which the machinery is essential. A building converted and adapted to a specific purpose occupies the same status as a building erected for a like purpose. In the absence of an agreement between the parties, the controlling test in Virginia is whether the machinery is permanent in its character and essential to the purpose for which the building is occupied or employed. The chief value of the other tests is the evidence they give in support of the controlling test.

In support of his claim, the appellee cites and relies on the cases of *McConnell* v. *Chelton Trust Co.*, 282 F. 105, and *Neufelder* v. *Third Street and Suburban Ry.*, 23 Wash. 470, 63 P. 197, 83 Am. St. Rep. 831.

In the first case, the facts and circumstances, while similar to those of the instant case, were not identical. The turning point in that case was on a question of fact, —the intent with which machinery was put upon mortgaged premises. The court agreed that the intention of the party placing the machinery in the building was the controlling factor. Two of the judges held that there was a lack of proof to show that there was an intention on the part of the owner to install the machines as a part of the permanent improvements to the building. The remaining judge, in a vigorous dissent, held that the evidence affirmatively showed an intention to install the machines as a permanent addition to a machine shop.

The case from the State of Washington was decided under a rule of law peculiar to that State and in accordance with local policy. The opinion recognized that a different rule was applied in other states.

We are not unmindful that there are earlier cases which hold that where machinery has been installed in a building and may be removed without injury to the building, it retains its characteristic of personalty; but it will be found in most of these cases that either the installation was only temporary, machinery not essential to the purpose for which the structure was devoted, or local policy controlled.

Coming now to the facts in this case, we think that the evidence clearly discloses the intention of Walters. He testified that he purchased the former silk mill building for the purpose of converting it into a modern bakery plant. He made alterations in it to fit his purposes, and acquired and placed therein additional machinery of the value of $18,000. The machinery was very heavy and had to be securely fastened to the floor of the building to be safely operated. It could not be removed therefrom without being dismantled at great cost.

As indicating that his venture was not merely temporary and that the expenditure involved was no mean item to Walters, it may be noted that the deed of trust which he placed upon the building provided that the payment of the purchase money should be extended over a considerable period of years.

Every one of the foregoing facts and circumstances constitute an element of permanency of enterprise. The machinery was essential for the conduct of the character of business which Walters said he intended to establish. It was placed in the building to carry out the very purpose for which the building was acquired, adapted, occupied and used. Its very nature, its cost, manner of annexation to the building, and the purpose to which it was to be devoted, all negative any idea of a temporary venture.

The fact that the deed of trust was given to secure the Danville Holding Corporation for a part of the purchase money does not alter the situation. This case is governed by the law of fixtures and not by the law of liens. Neither the circumstances of the lien, its character, nor its priority at the time of its execution, have any bearing upon the elements which determine the character of a fixture as realty or personalty, when there is no agreement between the parties in the instrument creating the lien or otherwise as to the specific identity and nature of the chattel in question.

We think it is conclusive from his admissions, his acts, the nature and character of the machines, the purpose for which they were to be used, and the amount expended for them, that Walters intended to make a permanent accession to the building purchased by him. It, therefore, follows that the machinery in question became real fixtures and subject to the deeds of trust executed by Walters as the owner of the freehold.

For the foregoing reasons, the decree complained of is reversed. The debt of the Hughes Memorial School having been satisfied, a final decree will be entered here adjudging and declaring the machinery listed in the stipulation between the parties to be real fixtures and subject to the deed of trust from J. M. Walters and wife to R. C. Clement, trustee, dated November 16, 1937.

*Reversed.*