**In re Harold P. ALTERMAN, Debtor.**

**Bankruptcy No. 90–10488–AB.**

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

May 24, 1991.

Roy B. Zimmerman, Alexandria, Va., for debtor.

Robert L. Deichmeister, Fagelson, Schonberger, Payne & Deichmeister, Oakton, Va., for A. Budd Fenton.

Gordon Peyton, Alexandria, Va., Trustee.

Drs. William L. Amoroso, III, Steven Melman and Daniel C. Negola, Potomac, Md., Purchasers (pro se).

## MEMORANDUM OPINION

MARTIN V.B. BOSTETTER, Jr., Chief Judge.

This matter is before the Court upon a motion for clarification by three veterinarians, Drs. William L. Amoroso, III, Steven

Melman, and Daniel C. Negola (collectively, the "Purchasers"), as to the ownership of approximately 95 stainless steel animal cages (the "Cages") which they purchased at a trustee's sale of assets conducted on July 3, 1990 (the "Trustee's Sale"). On July 16, 1990, this Court set aside the Trustee's Sale after the record disclosed that Dr. A. Budd Fenton (the "Landlord"), the former landlord of the debtor, Dr. Harold P. Alterman (the "Debtor"), had objected to the sale. The Landlord contended that the Cages belonged to him and were therefore not property of the Debtor's estate. For the reasons stated herein, an order will be entered declaring the Landlord the owner of the Cages.

On January 1, 1983, the Landlord leased to the Debtor, pursuant to a written lease agreement (the "Lease"), certain land and all improvements thereon, including a building containing an animal hospital. The Landlord had operated a veterinary practice on the premises prior to entering into the Lease. The Cages had been installed on the premises by the Landlord at least 15 years before the parties entered into the Lease.

At the time they entered into the Lease, the Debtor and the Landlord also executed a Practice Option Agreement (the "Option Agreement") pursuant to which the Landlord granted to the Debtor an option to purchase the veterinary practice. The pertinent part of the Option Agreement is paragraph 4, which provides as follows:

> For the purposes herein, the veterinary practice conducted at the Leased Premises which is the subject of this purchase option shall be defined as the right and ability to engage in the practice of veterinary medicine which includes all assets associated with that practice such as the furniture, fixtures, equipment, personal property, medical records and all other assets, tangible and intangible, of whatever nature located at or within the Leased Premises (*with the exception of those items listed on Exhibit "A" attached hereto*), ... [emphasis added]

A copy of the Option Agreement was introduced in open court but no Exhibit "A" was attached to it. In addition to the Option Agreement, the Landlord and the Debtor entered into a separate Real Estate Option Agreement pursuant to which the Debtor was granted an option, which he never exercised, to purchase the real property where the animal hospital was located.

On January 1, 1986, the Debtor exercised his option to purchase the veterinary practice and executed and delivered a promissory note (the "Note") in partial payment of the purchase price. Included in the Note was a clause granting the Landlord a security interest in certain assets described in a schedule to the Note. The Cages were described on the first page of such schedule. The Note was signed by the Debtor and initialed on each page by the Debtor and the Landlord.

On March 8, 1990, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code.[1] On the list of inventory submitted by the Debtor to the Court in connection with his filing, the Debtor listed the Cages as part of his inventory.

On June 13, 1990, Gordon Peyton (the "Trustee") filed a Notice of Intention to Sell Personal Property of the Debtor (the "Notice"). The Notice was sent to all creditors of the Debtor as well as all persons who expressed an interest in buying assets of the estate. The Notice indicated that such sale would include the "[c]ontents of Debtor's former place of business, Penn Daw Animal Hospital, *exclusive of fixtures and miscellaneous property of landlord....*" (emphasis added). Prior to the Trustee's Sale, the Trustee purportedly advised prospective bidders that the Cages were included in the property that was to be sold at the Trustee's Sale. *Memorandum in Support of Purchasers' Motion to Reinstate the Sale* at 3 and 8. However, the Trustee purportedly told the Landlord and his counsel that the Cages would not be sold by the Trustee. *Transcript of July 16, 1990 Hearing on Motion of Fenton to Set Aside Sale* at 4.

---

1. By an order dated May 23, 1990, the case was converted from Chapter 11 to Chapter 7.

This Court conducted the Trustee's Sale by an auction in open court. The Landlord did not attend the Trustee's Sale. At the sale, counsel for the Landlord stated, "[y]our Honor, I would simply like to bring your attention to the fact that one of the assets listed for sale is—there are large cages for the animals, and the landlord's position is that those cages are a fixture attached to the freehold. We're not certain whether they can be removed without damaging the building and—and destroying the walls." *Transcript of July 3, 1990 Hearing on Motion of Trustee to Sell Property* at 5. In response, the Trustee stated, "[y]our Honor, [the Cages] are on the schedules. [Counsel for the Debtor] scheduled them as assets of the Debtor, and, therefore, I take the position that, at least for purposes of today, they are assets of the bankrupt estate and are subject to sale." *Id.* This Court then announced that the successful bidder for the Cages must accept any liability for damage to the building in the removal of the Cages from the Landlord's premises. At the Trustee's Sale, the Purchasers bought the unencumbered assets used in connection with the Debtor's former veterinary practice, including the Cages, for $10,000. There were no bidders other than the Purchasers. The Trustee currently holds the Purchasers' $10,000.

Two days after the Trustee's Sale, the Landlord filed a motion to set aside the sale on the ground that the Cages were owned by the Landlord and were not part of the Debtor's estate. On July 16, 1990, at an expedited hearing on the Landlord's motion, this Court ordered that the Trustee's Sale be set aside until this Court could conduct an evidentiary hearing to determine what property had passed to the Trustee. On August 10, 1990, the Landlord filed a Complaint For Declaratory Judgment seeking a judgment declaring the Landlord the owner of the Cages and a motion for expedited hearing on such complaint, which was set for August 14, 1990. On August 14, this Court granted a continuance of the hearing to August 21, 1990. On August 20, 1990, a consent order, presented by the Landlord and approved by the Trustee, the Landlord and the Debtor, was entered by this Court granting the Landlord a judgment declaring the Landlord the owner of the Cages. On August 21, 1990, the Purchasers wrote a letter to this Court alleging that they were not notified of the August 14 hearing and filed a motion for clarification seeking a hearing on the issue of the ownership of the Cages. On November 27, 1990, this Court, *sue sponte*, reconsidered its consent order declaring the Landlord the owner of the Cages on the ground that it was unclear as to whether the Purchasers, before this Court *pro se*, received proper notice of the August 14 hearing. This Court ordered that another hearing be set on December 19, 1990 to take evidence on the issue of the ownership of the Cages.

At the December 19 hearing, the Purchasers contended that, because the Landlord did not produce Exhibit "A" to the Option Agreement, the Landlord could not prove that he owned the Cages and that, as a result of the Trustee's Sale, the Purchasers became the owners of the Cages. The Purchasers further contended that the Cages constitute trade fixtures and therefore were owned by the Debtor as lessee of the animal hospital.[2]

---

2. Because the Cages were not installed by the Debtor but rather by the Landlord, the Purchasers' trade fixture argument has no merit. *See Bolin v. Laderberg*, 207 Va. 795, 802, 153 S.E.2d 251, 256 (1967) ("[w]e take note of the rule followed in some jurisdictions, ... that 'anything brought on the premises by the *lessee* to facilitate the purpose for which he leased the premises and which [is] not attached to the premises, or attached so slightly that its removal would cause no injury, [is] regarded as a trade fixture and removable by the lessee at the termination of the lease, despite ... a provision in the lease ... against its removal.'") *quoting* 22 Am.Jur., Fixtures, § 41, p. 752 (emphasis added). In a memorandum filed with this Court, the Purchasers also contend that, because the Debtor's inventory list filed with this Court after he filed his Chapter 11 petition contained a description of the Cages, and because the Landlord did not object to the Debtor's listing the Cages on his schedule of assets, the Landlord should be precluded from now arguing that he is the owner of the Cages. The Purchasers cite no authority for the proposition that the true owner of property, listed by a debtor on his schedule of assets, is divested of his ownership by his failure to raise an objection to such

The Landlord asserted that, although neither he nor the Debtor could locate Exhibit "A" to the Option Agreement, the Cages were not intended by the Landlord or the Debtor to constitute an asset that the Debtor had an option to purchase under the Option Agreement. Furthermore, the Landlord argued that the Cages constituted fixtures and consequently did not pass to the Debtor when the Debtor exercised the option under the Option Agreement.[3]

In order for the Purchasers to be successful in their motion to reinstate the Trustee's Sale, it must be found that the Cages were property of the Debtor's estate. Section 541 of the Bankruptcy Code provides generally that an estate consists of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). To determine whether the Debtor owned the Cages, we must look first to the agreements reached by the Landlord and the Debtor prior to the commencement of the case, especially the Option Agreement.

According to Paragraph 4 of the Option Agreement, the assets over which the Debtor had an option were all assets associated with the Landlord's veterinary practice, including "furniture, fixtures, equipment, personal property, medical records and all other assets, tangible and intangible, of whatever nature located at or within the Leased Premises (with the exception of those items listed on Exhibit "A" attached hereto)". Because Exhibit "A" apparently could not be located by either the Debtor or the Landlord, the Option Agreement is incomplete and the intent of the parties cannot be established solely by examining the Option Agreement itself. Accordingly, the Landlord introduced the testimony of both himself and the Debtor regarding their intent with respect to the ownership of the Cages.

The Landlord testified that at the time the Option Agreement was entered into with the Debtor they discussed the fact that the Cages were to remain a part of the building due to the fact that the building could not be leased as an animal hospital without the Cages being on the premises. *Transcript of December 19, 1990 Hearing on Motion of Dr. Amoroso for Clarification* ("Dec.Tr.") at 24. In addition, the Debtor testified that he and the Landlord had verbally agreed that the Cages were to be part of the building. Dec.Tr. at 43. Furthermore, the Debtor stated that it was his understanding that the Cages belonged to the Landlord at the time of his filing for bankruptcy. Dec.Tr. at 44.

■ No objection was raised by any participant at the December 19 hearing to the introduction of parol evidence. However, because the parol evidence rule is a substantive rule of law and not a rule of evidence, we must examine the rule, as interpreted by the courts of Virginia. *In re Westbrook Foods, Ltd.*, 7 B.R. 100, 101 (Bankr.E.D.Va.1980); *see Shockey v. Westcott*, 189 Va. 381, 389, 53 S.E.2d 17, 20 (1949) ("parol evidence is always admissible, not to contradict or vary the terms, but to establish the real contract between the parties.").

■ Parol evidence of prior or contemporaneous oral negotiations or stipulations is inadmissible to vary, contradict, add to, or explain the terms of a complete, unambiguous, unconditional written agreement. *In re Aero–Auto Co., Inc.*, 33 B.R. 107, 109 (Bankr.E.D.Va.1983); *McComb v. McComb*, 226 Va. 271, 274, 307 S.E.2d 877, 879 (1983). Two exceptions to the rule apply in the case at bar so that the testimony of the Landlord and the Debtor may be considered.

■ We note that the Supreme Court of Virginia stated in *McComb* that the parol

---

schedule. The Debtor testified that the inventory list was not prepared by the Debtor but rather was a list of the Landlord's inventory prepared at the direction of the Landlord in 1982. *Transcript of December 19, 1990 Hearing on Motion of Dr. Amoroso for Clarification* at 50.

3. We conclude that although the Landlord's fixture argument is not well developed, it is presumably grounded on the theory that the Option Agreement covered personal property only, and that the Cages, being fixtures, were covered by the Real Estate Option Agreement under which the Debtor never exercised his option.

evidence rule "only applies to controversies between parties to the contract.... It does not apply to controversies between parties to the writing and third persons." *McComb*, 226 Va. at 275, 307 S.E.2d at 880, *quoting Roselle v. Commonwealth*, 110 Va. 235, 237, 65 S.E. 526, 527 (1909). In the instant case, the controversy is not between the Debtor and the Landlord. Indeed, those parties agree that they intended for the Cages to remain the property of the Landlord. Rather, the controversy here is between the Landlord and persons not parties to the Option Agreement, the Purchasers.

▮ In addition, that same court has stated that "[w]here the entire agreement has not been reduced to writing, parol evidence is admissible, not to contradict or vary its terms but to show additional independent facts contemporaneously agreed upon, in order to establish the entire contract between the parties." *High Knob, Inc. v. Allen*, 205 Va. 503, 506, 138 S.E.2d 49, 52 (1964). This is generally referred to as the partial integration doctrine. *Id.* The Option Agreement presented as evidence is, on its face, an incomplete agreement. Neither the Debtor nor the Landlord could produce an original counterpart or even a photocopy of the agreement which contained the exhibit. Based on the testimony of the parties and on a review of the Option Agreement, this Court finds that the Option Agreement presented as evidence is a partially integrated agreement.

▮ The testimony of the Debtor and the Landlord is uncontroverted that at the time they entered into the Option Agreement, the parties considered the Cages to be real property and verbally agreed that the Debtor did not have an option to purchase the Cages under the Option Agreement. Consequently, because the Debtor had no rights in the Cages, the Cages never become part of the Debtor's estate pursuant to 11 U.S.C. § 541(a)(1).

▮ In addition to the Landlord's assertion that he and the Debtor agreed that the Cages would remain part of the Landlord's building, the Landlord also contends that the Cages are fixtures and therefore were not conveyed to the Debtor under the Option Agreement. To determine whether the Cages are fixtures, we must look to state law. Virginia has established general rules when examining whether property constitutes a fixture. *See Danville Holding Corp. v. Clement*, 178 Va. 223, 232, 16 S.E.2d 345, 349 (1941) (holding that bakery machinery that was fastened to a concrete floor by bolts were fixtures). Absent a specific agreement between the parties as to the character of property, the following three factors will be applied to determine whether property constitutes a fixture: (1) annexation of the chattel to the realty, actual or constructive; (2) its adaptation to the use or purpose to which that part of the realty to which it is connected is appropriated; and (3) the intention of the owner of the chattel to make it a permanent addition to the freehold. *Id.*

▮ We examine first whether the Landlord annexed the Cages to the realty. In Virginia, while there must be actual or constructive annexation, the method or extent of annexation is given little weight. *Danville Holding*, 178 Va. at 232, 16 S.E.2d at 349. The *Danville Holding* court stated that, "[t]he method of the annexation to the realty receives slight consideration and then only as a circumstance from which the intention of the annexor may be deduced." *Id.* According to *In re Shelton*, 35 B.R. 505, 509–510 (Bankr.E.D.Va. 1983), "annexation" is "[t]he act of attaching, adding, joining, or uniting one thing to another; ..." *quoting* Black's Law Dictionary 81 (5th ed. 1979). The Landlord testified that the Cages were installed by the Landlord on the premises approximately 15 years before the Option Agreement was entered into and that the Cages were "back to each other, becoming the walls of two rooms, and sitting on the base part of the floor, so that the floor came right up and became the base and part of the floor." Dec.Tr. at 23. In addition, the Debtor testified that the Cages "were on top of a platform, and they were secured to the wall or to each other, depending on—there was one area where they backed up to each

other. There were others where they just were against the wall." *Id.* at 43. Based on such testimony, this Court finds that the Cages were affixed to the realty to such an extent as to fall within the definition of annexation.

■ Turning to the issue of whether the Cages were adapted to the use or purpose of the realty to which they were annexed, we note that courts in Virginia give this factor great weight. *Danville Holding*, 178 Va. at 232, 16 S.E.2d at 349 ("If the chattel is essential to the purposes for which the building is used or occupied, it will be considered a fixture, although its connection with the realty is such that it may be severed without injury to either."). The Landlord testified that the Cages were to be part of the building "because it could not be leased again without this specific equipment in it. All the rest of the equipment was movable." Dec.Tr. at 24. Because the Cages were annexed to a building used by the Landlord as an animal hospital, we find that they were "adapted to the use or purpose of the realty to which they were annexed" in accordance with the *Danville Holding* criteria.

■ Finally, we must examine the intention of the Landlord when he annexed the Cages in the late 1960s. "The intention of the party making the annexation is the paramount and controlling consideration.... The intention need not be expressed in words; it may be inferred from the nature of the article affixed, the purpose for which it was affixed, the relationship of the party making the annexation and the structure and mode of annexation...." *Danville Holding*, 178 Va. at 232, 16 S.E.2d at 349. In Virginia, a presumption arises that where the person making the annexation is the owner of the realty, the chattel is a fixture. *In re Jessee's Paving Co. v. White Excavating Co.*, 39 B.R. 265, 267 (Bankr.W.D.Va.1983) ("When determining intent, courts are frequently aided by presumptions. One such presumption in the law of fixtures has long been established in Virginia.... Where the owner of realty himself annexes chattels, any doubt as to his intention to perma-

nently affix them will be resolved in favor of such intent, upon the theory that he seeks to permanently enhance the usefulness and market value of his property."). Here, the Landlord was the owner of the realty when he annexed the Cages, 15 years prior to entering into the Option Agreement with the Debtor, in connection with the Landlord's operation of an animal hospital. No evidence was adduced to rebut the presumption that the Landlord intended to permanently improve the realty to which the Cages were annexed.

Because of substantial evidence that the Cages were annexed to the realty, that the Cages were adapted to the purpose for which the realty was used, and that the Landlord intended at the time of annexation to make the Cages a permanent addition to the realty, we find that the Cages are fixtures. In addition, because of credible testimony of both the Landlord and the Debtor that they never intended for the Cages to be conveyed to the Debtor, we find that the Debtor had no interest in the Cages as of the commencement of his case, which would pass to the Trustee. Therefore, the Cages never became part of the Debtor's estate but rather remained the property of the Landlord.

For the foregoing reasons, this Court finds the Landlord to be the owner of the Cages. The Purchasers shall have the right to either retain the assets purchased for $10,000 at the Trustee's Sale, other than the Cages, or return such assets to the Trustee and receive a refund of their purchase price less the cost of the use of such property. In the event the parties are unable to agree upon the same, the Court will hold a further evidentiary hearing. An appropriate order will be entered.