Statement.

# Wytheville.

WICKHAM & NORTHROP, RECEIVERS, v. THE RICHMOND
STANDARD STEEL, SPIKE & IRON CO.

### June 13, 1907.

1. LANDLORD AND TENANT—*Rent—Use of Personal Property as Part of Consideration.*—The presence of personal property upon land, to be used in immediate connection with the land and essential to its enjoyment for the purposes for which the land is leased, may immeasurably increase the rental value of the land, and the return for the use of both properties may be stipulated for as rent, and, in case of default, may be distrained for.

2. LANDLORD AND TENANT—*Lease—Mill Site and Water—Separate Values—Distress for Whole.*—It is unnecessary, in this case, to determine whether or not water drawn from a natural stream and conveyed into a permanent, artificial canal, and appropriated to useful purposes, is *per se* demisable, for where, as in this case, the covenants in a lease of a mill site, with sufficient water from an artificial canal to operate the mill, are interdependent, the mere fact that the parties have chosen to fix separate values on the use of the land and of the water, is immaterial, and the whole may be recovered by distress.

3. LANDLORD AND TENANT—*Distress—Abandonment—Second Distress—Character of Statutory Distress.*—The abandonment of a distress warrant for rent actually due, after levy and before removal or sale of the property, or other injury to the tenant, is no bar to a second distress warrant for the same rent under the statutes of this State, even if it were otherwise at common law. The proceeding under the statute is judicial in its character, and the rights of the tenant are thoroughly protected. The landlord is no longer "his own carver," as at common law.

Error to a judgment of the Law and Equity Court of the city of Richmond in an action of trespass on the case. Judgment for the plaintiff. Defendants assign error.

*Reversed.*

The opinion states the case.

*H. Taylor, Jr.,* and *Eppa Hunton, Jr.,* for the plaintiff in error.

*Wm. L. Royal,* for the defendant in error.

WHITTLE, J., delivered the opinion of the Court.

The object of this action is to recover damages from the plaintiffs in error for the alleged illegal levy of a distress for rent upon the property of the plaintiff.

The lessors, who were predecessors in title of the defendants, demised to the lessee, through whom the plaintiff claims, a lot or boundary of land in the city of Manchester, adjoining their canal, for a mill site, together with sufficient water from the canal to operate the mill and machinery which the lessee was to erect and install upon the premises. The lease was for the term of twenty-five years, at an aggregate annual rental of $2,300, of which sum $275 was apportioned to the land, and $2,025 to water. In the year 1905, the arrearage of the plaintiff under the lease amounted to $2,978.96; whereupon, the defendants caused a distress warrant to be levied upon the property of the plaintiff on the premises for the amount due. The articles levied on were advertised for sale, but were not sold or removed; and it appearing that the property was subject to mortgage, as against which, by statute, it was not liable for more than one year's rent, the levy was released and the warrant dismissed. Subsequently another warrant was issued for one year's rent and levied on substantially the same property, which was sold, and upon that proceeding this action is founded. To an adverse verdict and judgment the defendants bring error.

The dominant contentions in the case, both of which were resolved in the plaintiff's favor, are: (1) That the stipulated

compensation for the use of water does not constitute rent, and, therefore, was not collectible by distress; and (2) that the abandonment of the first levy was a bar to the second.

With regard to the first proposition it may be remarked, that it is not possible to read the agreement of the parties as a whole without being sensible that it was their intention to treat the return for both land and water as *rent*. Though the consideration for the use of the land and water respectively are embodied in separate clauses of the same instrument, the lease was for a special purpose which would have been wholly defeated by the failure of either element of the consideration; each forms an indispensible part of the whole, the substance of the subject matter of the contract, and they are consequently not severable. *Rogers* v. *Pattie,* 96 Va. 501, 31 S. E. 897. The spike-mill and machinery, destitute of water to operate them, would have been as valueless as a water grist-mill under like conditions.

Unquestionably the rental for land may be immeasurably increased by the presence of personal property upon it, the consideration for the enjoyment of which may be included in the lease. In such case, the return from the use of both properties is considered to be rent, upon the assumption that the entire rent issues out of the land, while the benefit of the personality is an incident which enhances its value.

In *Mickle* v. *Miles,* 31 Penna. St. 20, the court said: "The ordinary definition of a rent as a profit issuing yearly out of lands and tenements corporeal, is defective in overlooking some of the cases that belong to the class; as where a furnished house or stocked farm is leased, which are common cases. 5 Bos. & P. 224; 5 Co. 16, b; Leon. 42. In such cases the personal property is really a part of the consideration of the rent, and it is only by a fictitious accommodation of the case to the defective definition that it can be said that the rent issues exclusively out of the land."

So in *Fernwood Masonic Hall Asso.* v. *Jones,* 102 Penn. St.

307, where the lessee covenanted to pay the lessor for all gas consumed on the premises, it was held that arrearages for gas were rent and might be distrained for. In that case it was said that the stipulations for the rent of the building and to pay for the gas were in immediate connection, and the covenant to pay for the gas was as much a part of the rent as would have been a covenant to pay taxes on the premises during the term.

In *Sutliff* v. *Atwood,* 15 Ohio St. 186, where the lease was of a dairy farm with stock upon it, and in *Baldwin* v. *Walker,* 21 Conn. 168, the lease of a factory and fixtures, it was held that the consideration received for both properties was to be regarded as rent. See also 18 Am. & Eng. Ency. L., 260, n. 2.

To the same effect are the decisions in this State.

Thus in *Newton* v. *Wilson,* 3 Hen. & Mun. 470, "a lease was made of a mill, together with a tract of land adjoining and a black man as a miller, for a term of years, rendering an annual rent; the miller had previously to the lease been emancipated by the lessor," and the lessee was allowed an abatement of rent.

In *Williams* v. *Haywood,* 3 Munf. 277, it was said: "In a lease of a tract of land, with sundry slaves and other personal property, reserving by way of rent, a gross sum payable annually, the remedy *by distress* may be resorted to, without any express stipulation."

So also, in the case of *Mickie* v. *Wood,* 5 Rand. 571, the principle is recognized that in a lease or land and personalty, the consideration reserved does not lose its character of rent from the circumstance that personal property is embodied in the lease.

It is not necessary in this case to determine whether water lawfully withdrawn from a natural stream and conveyed into a permanent artificial channel and appropriated to useful purposes *is per se* demisable. However that may be, we are of opinion that the agreement in question comes fully within the influence of the doctrine announced by the authorities cited.

The covenants in the lease for the mill site with sufficient water from the canal to operate it are inter-dependent covenants, and the mere fact that the parties have chosen to fix separate values upon the use of the land and water cannot dissociate the properties and destroy the mutual dependence of the connecting stipulations. The associated use of the properties constitutes the base upon which the enterprise which gave birth to the agreement rests. Both are indispensable to the success of the plan, and the withdrawal of either would defeat it. Consequently, the covenants are not severable, but form a joint and indivisible consideration for the lease. It would be mere juggling with words to say, that if the lessors had reserved a rental of $2,300 *per annum* for the mill site with the additional privilege to the lessee of withdrawing sufficient water from the canal to run the mill, the consideration would be rent, yet to hold that, though precisely the same result is attained by apportioning the consideration for the land and water, the sum reserved for water loses its character of rent—an attribute with which it is impressed by reason of its union with the land.

Under the principle of the cases referred to, the extent of the enhancement of value of the premises to the lessee from the use of the personalty is immaterial; it is the fact that the properties are inseparably blended together in the same lease and moved the parties to enter into the agreement that clothes the entire consideration with its character of rent.

It is not necessary to decide how far this court, in the beginning of the twentieth century, would adhere to the narrow definition of rent which obtained in the time of Lord Coke, that it only issued out of "things manurable," (Hargraves's & Butler's Co. Litt., 44b.); for, as we have seen, the case falls within the well recognized exception to the common law rule, namely, that personal chattels in union with and essential to the purposes for which the land is leased are demisable. 1 Taylor's Landlord & Tenant (9th ed.) sec. 18.

The remaining proposition, that the abandonment of one sufficient levy under a distress warrant for the same rent constitutes a bar to the second levy, is admittedly a correct statement of the general rule of the common law. At common law the landlord was his own executioner, "his own carver;" the proceeding was the sole act of the landlord, and the tenant who was at his mercy was not liable to be twice vexed for the same rent. 1 Taylor's Landlord & Tenant (7th ed.), sec. 733; *Bagge* v. *Mawby,* 8 Exch. 649; *Dawson* v. *Crapps,* 50 Eng. C. L., 961; *Sear* v. *Caldicotl,* 45 Eng. C. L., 123; *Quinn* v. *Wallace,* 6 Whart. (Pa.) 452.

Altogether different conditions prevail at present with respect to distress warrants. The proceeding under the statute is judicial in its character, and the rights of the tenant are thoroughly safeguarded. Ch. 177, Va. Code, 1904. But even the strict rule of the common law was subject to the exception that for justifiable cause the landlord might abandon the first distress and distrain again for the same rent. *Everett* v. *Neff,* 28 Md. 176, 186; 24 Cyc. 1295; *Brooks* v. *Wilcox,* 11 Gratt. 411.

In this instance there is no evidence of a wrongful distress wantonly made. The arrearages distrained for were confessedly due, and under the first warrant the property levied on, though advertised for sale, was not removed from the premises. The right of the lessors to distrain for the water-rent was denied, and they were threatened with an action for damages if they resorted to that remedy. The first warrant was for more than one year's rent, and the lessors, discovering that the property was under a mortgage, were doubtless of opinion (perhaps erroneously) that it would be more regular to issue a warrant for one year's rent only. Va. Code, 1904, sec. 2791. The lessors would be liable for any injury that may have been occasioned by the levy of the first distress warrant, but it cannot, upon the facts of this case, constitute a bar to proceedings under the second warrant.

The rulings of the trial court on these controlling questions render a new trial along other lines inevitable, and make it unnecessary to notice the remaining assignments of error.

For these reasons the judgment must be reversed, the verdict of the jury set aside, and the case remanded for a new trial not in conflict with the views expressed in this opinion.

*Reversed.*