## CIRCUIT COURT OF HENRICO COUNTY

Tinsley, Sheriff, et al.

    v.

Canterbury Shopping Center et al.

January 30, 1974

Case No. K-662

By JUDGE E. BALLARD BAKER

A basic issue is what legal rights Richmond Fixture and Equipment had in certain restaurant equipment on April 15, 1971, and whether those rights have been improperly infringed upon by the sale conducted at the request of Canterbury Shopping Center. The chronology of events, and my views as to the consequences, are as follows:

October 5, 1967 - Canterbury Shopping Center, as landlord, leased premises under construction to Canterbury Old English Pub, Michael W. Matzuk, President of the tenant. Paragraph 10 gave the landlord a lien on fixtures or equipment placed or installed on the premises as security against the default of the tenant.

October 13, 1967 - Canterbury Old English Pub became incorporated as Canterbury Old English Pub, Inc.

March 1, 1969 - Canterbury Old English Pub, Inc., took possession of the completed premises under its lease. Due to problems with a beer license, the tenant traded under the name Canterbury Inn, Incorporated, to the knowledge of the Shopping Center. Provisions of the assumed name statute, § 59.1-69 were not complied with, this being known to Shopping Center.

May 29, 1969 - By conditional sales agreement, Richmond Fixtures sold items to the tenant for $31,507.37, believing the tenant to be named Canterbury Inn, Incorporated.

While some of the items could arguably be fixtures, with § 8.9-313 becoming applicable, a consideration of the agreement and the interest of the parties in the leased premises leads to the conclusion that these items are not to be considered as fixtures. While the items have value as a unit in place, they are removable and no intent on the part of either party that they be made permanent parts of the realty has been shown. Danville Holding v. Clement, 178 Va. 223.

June 4, 1969 - Richmond Fixture records a financing statement referring to the conditional sales agreement, but it is recorded in the name of Canterbury Inn, Incorporated, instead of Canterbury Old English Pub, Inc.

At this point, it seems that the items involved are properly "equipment" as defined in § 8.9-109; Richmond Fixture has a "purchase money security interest" on the equipment, § 8.9-107; the security interest has attached, § 8.9-204; the security interest has not been perfected, § 8.9-303, because the filing failed to give the proper name of the debtor--Canterbury Old English Pub, Inc. (Virginia Comment to § 8.9-402.)

Section 8.9-301 tells who takes priority over an unperfected security interest. Sub-section (b) provides that a ". . . person who becomes a lien creditor without knowledge of the security interest and before it is Perfected;" prevails. A "lien creditor" is

defined in § 8.9-301(3) as a creditor ". . . who has acquired a lien on the property involved by attachment, levy, or the like. . . ." The lien given under the lease is not sufficient.

Canterbury Shopping Center, Inc., is not a lien creditor and Richmond Fixture would prevail at this stage.

January 16, 1970 - Canterbury Shopping Center, Inc., had a distress warrant levied on certain property on the leased premises, Canterbury Old English Pub, Inc., having fallen behind on the rent. No further action was taken on this levy. The question of whether this levy has the effect of giving priority to Shopping Center will be discussed later.

February 25, 1970 - Shopping Center obtained judgment against Pub, Inc., for possession and $4,705.35, covering rent and other items. The tenant left the premises around this time, leaving the equipment. Shopping Center had the premises padlocked and kept the keys.

Shortly after this, Shopping Center became aware that Richmond Fixture claimed an interest in items left behind by the tenant, though it did not learn the exact property or types of property. It did cooperate with Richmond Fixture, seeking desirable persons to rent the premises and buy the equipment formerly used by the tenant.

January 27, 1971 - Richmond Fixture is advised by Shopping Center that it has begun action to satisfy its $4,705.35 judgment by a sheriff's sale. The letter advises that no record of a lien by Richmond Fixture against Canterbury Old English Pub, Inc., can be found.

January 28, 1971 - The Sheriff executed a writ of fi. fa. at the leased premises.

March 1, 1971 - Richmond Fixture filed an amended financing statement in the proper name, Canterbury Old English Pub, Inc., of its debtor.

April 15, 1971 - At a sheriff's sale the property was sold for $5,300. Prior to the sale, Richmond Fixture gave oral notice to those present that it claimed a first lien on all property. Prior to the sale, the Sheriff, on learning of the dispute, required Shopping Center to post an indemnity bond for $30,000.

The security interest of Richmond Fixture was perfected on March 1, 1971. Nothing in Sections 8.9-401 through 8.9-406 is sufficient to make the correction of March 1, 1971, relate the filing back to June 4, 1969. The error in the June 4, 1969, filing was misleading and cannot be termed minor. It prevented the filing from becoming effective. While the Stipulation refers to the March 1, 1971, correction as an "amended financing statement," I find nothing which gives retroactive effect to the correction.

Richmond Fixture had an unperfected security interest until March 1, 1971. Did Shopping Center become a lien creditor of the tenant without knowledge of the security interest and before March 1, 1971?

On January 16, 1970, Shopping Center had a distress warrant levied on the property, and a return was made by the Sheriff. Shopping Center was a lien creditor as long as that levy was alive. Under § 55-237, the return must be filed with the Clerk of the court within sixty days, and if a levy has been made, but property not sold, the clerk can issue a writ of venditioni exponas just as if the return was on a writ of fieri facias (§ 8-418). Assuming that the return was filed, and this is not stated in the Stipulation, there was no further writ issued relative to the distress warrant. While the matter is far from clear, it seems to me that the lien under the distress warrant levy ceased prior to the sale. V.C., § 8-412; Wickham v. Richmond Spike Co., 107 Va. 44; 8 M. J. Executions, §§ 36, 37; 11 M. J. Landlord-Tenant, § 23. A lien cannot remain valid and effective indefinitely with no action taken to enforce it.

On January 28, 1971, Shopping Center became a lien creditor when a writ of fieri facias was executed pursuant to the judgment of February 25, 1970. (§ 8-411) On that date, which was before Richmond Fixture perfected its security interest, did Shopping Center have knowledge of the security interest?

Section 8.1-201(25)(c) says that, "a person 'knows' or has 'knowledge' of a fact when he has actual knowledge of it." "Knowledge" and "Notice" do not have identical meanings.

Paragraph 9 of the Stipulation states that Shopping Center, prior to January 28, 1971, ". . . became aware that Richmond Fixture claimed an interest in some of the equipment, fixtures and other property left behind by the judgment debtor. Shopping Center never learned the exact property or types of property in which Richmond Fixture claimed an interest . . ." In addition, Exhibit F attached to the stipulation, acknowledges that on January 27, 1971, Shopping Center had been informed that Richmond Fixture claimed a lien on fixtures in the premises, and that Shopping Center could not find a lien perfected against Canterbury Old English Pub, Inc.

The fact is that Richmond Fixture, prior to March 1, 1971, had no perfected security interest against the tenant. Where the name of the debtor is incorrectly stated in the financing statement, it cannot be said to be a minor error "not seriously misleading." V.C. § 8.9-402(5) There being no perfected security interest against Old English Pub, Shopping Center could not have knowledge of any.

Richmond Fixture did have a security interest under its May 29, 1969, conditional sale agreement, drawn in the name of Canterbury Inn, Incorporated, and Shopping Center had notice of a claim of Richmond Fixture and of the fact that this name had been indicated on the premises. If Shopping Center knew of the May 29, 1969, agreement then, even if it also knew the debtor was incorrectly named, Shopping Center knew of the security interest. However, the Stipulation

does not say that Shopping Center had knowledge of a security interest or of a conditional sales agreement, and the Court cannot enlarge on the Stipulation. Nor does Exhibit 7 lead to such a conclusion.

If § 8.9-301(1)(b) used the word "notice" instead of "knowledge," then under § 8.1-201(25)(c), I would hold contrary. However, the word is knowledge, meaning actual knowledge, and I do not think that has been shown. Consequently, I reach the conclusion that Shopping Center has priority over Richmond Fixture.

The nature of this proceeding should also be discussed.

Prior to the sale on April 15, 1971, the Sheriff required Shopping Center to post a $30,000, indemnity bond. The defendant, St. Paul Fire & Marine Insurance Company, posted it. This action is an interpleader action in the name of the Sheriff at the instance of Richmond Fixture against Shopping Center and St. Paul.

The indemnity bond was given under § 8-229, when the Sheriff gave notice to Shopping Center, the plaintiff in the action on which the levy was based, of doubt whether the property was liable to levy.

Under § 8-232, the Sheriff would have to suspend the sale ". . . at the instance of any claimant. . ." who posted a suspending bond. That was not done here.

Section 8-229 does not make any provision for an action against the indemnity bond required by it. Section 8-232 does provide for an action upon ". . . any such bond as is mentioned in this or the preceding section. . . ." The preceding section does make reference to an indemnity bond. However, when § 8-227 is considered, whether this reference in § 8-232 is sufficient to authorize this action is questionable.

Under § 8-227, when a person, such as Richmond Fixture, claims property taken under a writ of fieri facias or distress warrant three procedures are men-

tioned which can cause the court to exercise authority under § 8-226, which provides an interpleader action.

1. The officers can make application when no indemnity bond has been given.

2. When an indemnity bond has been given, ". . . the person who claims such property and has given such suspending bond as is hereinafter mentioned . . ." can make application.

3. The party issuing the process can make the application.

Richmond Fixture does not fit either category. Section 8-227 does not support this proceeding. In view of the specific provisions of § 8-227, it seems unusual that § 8-232 will permit an action on an indemnity bond where the person bringing the action has not given the suspending bond, but that is what it says. While no case proceeding under § 8-232 without a suspending bond has been found, it appears that this section does permit Richmond Fixture to proceed as it has.

There is some question raised as to whether possession of the equipment was in Shopping Center or Old English Pub at the time of the levy. If possession was in Old English Pub, then clearly under § 8-232 Richmond Fixture, by failing to give a suspending bond, etc., is bound by the statutorily conclusive presumption that the property was that of Old English Pub. However, under the Stipulation, I think it clear that the equipment here was in the possession of Shopping Center, Old English Pub long since having abandoned the premises.

In summary, my opinion is that Shopping Center had priority over Richmond Fixture to the extent of its judgment, but that the legal procedure followed by Richmond Fixture is proper.

Under these circumstances, is Richmond Fixture in position to complain that the sale price was too low,

that the property had a greater value and seek to establish that value and obtain judgment based upon that value less the priority interest of Shopping Center?

As indicated, the basis for this action is the section 8-232 provision,

Upon any such bond as is mentioned in this or the preceding section, an action may be prosecuted in the name of the officer for the benefit of the claimant, creditor, purchaser, or other person injured, and such damages recovered in such action as a jury may assess.

The indemnity bond under § 8-229 is to indemnify the sheriff, ". . . against all damage which he may sustain in consequence of the seizure or sale of such property and to pay to any claimant of such property all damage which he may sustain in consequence of such seizure or sale . . ."

As Shopping Center had a prior claim to the equipment sold, the sheriff's sale was proper. Richmond Fixture's complaint is that the sale price was not sufficient, bringing only $5,300, barely enough to cover the judgment of Shopping Center.

Richmond Fixture was advised of the sale and could have participated in the bidding in order to protect its interest. It did not do so. On the contrary, it appeared at the sale and gave oral notice to all present that it claimed a first lien on all property to be sold.

No case has been found which holds a sheriff, making a valid sale, liable to a second lienor because the sale does not bring sufficient money to satisfy the second lien.

Under the circumstances, it is my opinion that Richmond Fixture is entitled to recover only the balance remaining with the Sheriff after the sale and expenses. Sheriff Tinsley testified this was $449.45.